UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
HARTFORD, CONNECTICUT

2003 NOV 25  P 2: 31

US DISTRICT COURT

| | | |
|---|---|---|
| IGNATIUS UMEADI OKONKWO<br>Petitioner, | § | Civ. No. 3:02cv1733 (AWT) |
| -vs- | § | |
| JOHN ASHCROFT, ET. AL.,<br>Respondent | § | |

## SUPPLEMENTAL PETITION FOR WRIT OF HABEAS CORPUS, REQUESTING RELEASE ON AN APPLICATION FOR BAIL PENDING THE DETERMINATION OF THE PETITION FOR WRIT OF HABEAS CORPUS.

Petitioner, Ignatius U. Okonkwo, pro se litigant, (hereinafter "Petitioner/Plaintiff") respectfully moves this Honorable Court to review the unlawfulness of his mandatory detention without bond, pursuant to INA § 236(c). Petitioner files this petition as a supplement to his August 26, 2002, petition before this Court, which is still pending. In light of the recent development in his case, Petitioner has exhausted his administrative remedies in the bond issues and arriving alien. The Board of Immigration Appeals on October 21, 2003, affirmed, the Immigration Judge's decision without opinion citing 8 CFR 1002.1(e)(4), that the decision below is therefore the agency determination.

Petitioner asserts that he is being unlawfully detained because section 236(c) of the INA, codified at 8 USC § 1226(c)

-1-

does not retroactively apply to him, since he was released in
1995 without incarceration before that statutory section
became effective on October 9, 1998, and his conviction was
later **vacated.** Petitioner also challenges the constitutionality
of his unlawful detention  without a bond hearing. He is not
an arriving alien as alleged, "since an alien with a permanent
resident card and has no conviction is not an arriving alien.
Petitioner is a long time lawful permanent resident with
significant ties to the United States, who poses no risk of
flight or danger to the community. Petitioner relies on the
protection afforded by the Due Process Clause of the Fifth
Amendment and the protection against cruel and unusual
punishment of the Eighth Amendment to the constitution of
the United States of America.

## I. PETITIONER HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES AS TO THE ISSUE OF NOT BEING AN "ARRIVING ALIEN" AND UNLAWFUL DETENTION WITHOUT BOND.

Petitioner Okonkwo asserts that he has exhausted
his administrative remedies as per the allegation of him
being an **arriving alien,** and that further his mandatory
detention under the relevant statutes is not authorized by
statute. Therefore, Petitioner contends that the District
Court has subject matter jurisdiction to entertain  his
claims. To demonstrate that the administrative agency has
had full opportunity to resolve the aforesaid issues, Petitioner
attaches the Board of Immigration Appeals decision affirming
the Immigration Judge's determination to continue his detention

pursuant to INA § 236(c). See **Exhibit 1.**

The doctrine requiring that a party exhaust administrative remedies prior to seeking judicial review is designed to assure that administrative agencies have "a full opportunity to resolve a controversy or correct [their] own errors before judicial intervention." **Sagermark v. INS,** 767 F.2d 645, 648 (9th Cir. 1985); see also **Mohammed v. Slattery,** 842 F. Supp. 1553, 1557 (S.D.N.Y. 1994); **Chan v. Reno,** No. 95 Civ. 2586, 1997 WL 122783, at *36-37 (S.D.N.Y. Mar. 17, 1997). Exhaustion requirements are satisfied when the agency has in fact ruled on an issue. See **Sagermark,** 767 F.2d at 648 (whether or not the issue was technically before the BIA, the BIA addressed it thoroughly enough).

In the instant matter, because Okonkwo's proceedings were reopened his detention is curtailed under § 236(c) of the Act. However, detention under that section has been authorized only for those aliens with certain removable criminal grounds. Okonkwo's conviction for larceny in the 6th degree, which triggered his detention was **vacated** on October 30, 2000. Therefore, is implausible for the Respondents to suggest that Petitioner's detention is authorized under § 236(c).

Petitioner is a **Block-3 alien** who is entitled to release on bond as he is not an aggravated felon and has served no sentence in state custody. Therefore, the IJ retains jurisdiction to grant him a bond release pursuant

to the Transitional Period Custody Rules of 1997. **(TPCR)**.

Ordinarily, a writ of habeas corpus will not issue to a prisoner who has failed to exhaust available state or administrative remedies. **Salazar v. Reich,** 940 F. Supp. 96 (S.D.N.Y. 1996) (alien seeking release on bond pending determination of his application for political asylum and deportation proceedings must exhaust administrative remedies). See generally, **O'Sullivan v. Doerckel,** 526 U.S. 838, 845, 119 S. Ct. 1728, 1733 (1999) (in order to satisfy the exhaustion requirement a petitioner for a federal habeas review is required to present claims to the state supreme court even though its review might be discretionary). It is petitioner's burden to establish that he has exhausted all administrative remedies. See, e.g., **Mathews v. Evatt,** 105 F.3d 907, 911 (4th Cir. 1997), cert. denied, 522 U.S. 833 (1997) citing **Mallory v. Smith,** 27 F.3d 991, 995 (4th Cir. 1994).

Exhaustion of administrative remedies serves two purposes: protecting administrative agency authority and promoting judicial efficiency. See, **McCarthy v. Madigan,** 503 U.S. 140 at 145; **Facchiano v. U.S. Dep't of Labor,** 859 F.2d 1163, 1166-67 (3d Cir. 1988); **Bethlehem Steel Corp.,** 669 F.2d at 907. The exhaustion doctrine acknowledges that administrative agencies, not the courts, should have the primary responsibility for the programs they are charged to administer by Congress, it permits the agencies to exercise

-4-

and apply their special expertise relating to matters that
they are charged to administer; and it permits agencies the
opportunity to correct their own mistakes with respect to the
programs they are charged to administer. See e.g., **Thunder
Basin Coal Co. v. Reich,** 510 U.S. 200 (1994) (exhaustion of
administrative remedies required where the issues presented
involved the parties' rights and duties under a statute
that fell "squarely within the Commission's expertise").

Here, it is undisputed that the agency has had
ample opportunity to resolve these issues. To fulfil his
burden of exhausting administrative remedies Okonkwo has
applied for the relevant relief through the proper channels
at the administrative level. The agency has made its final
determination and the only way to achieving any further
remedy is by way of this judicial action. Sound discretion
governs and it serves judicial economy.

The Respondents' other justification for Petitioner's
detention is the allegation that he is **an arriving alien** who
is being detained pursuant to 8 CFR § 1.1(q).  See **Exhibit 2,
IJ's Decision at pp.2, dated April 23, 2003.** Pursuant to
the relevant regulations, an IJ has no authority over the
apprehension, custody, and detention of arriving aliens, and
is without authority to consider a bond request from an
arriving alien.

On August 17, 2000, the IJ denied Petitioner's motion
to reconsider the denial of bond on the ground that he was an

-5-

arriving alien but cited 8 CFR § 236.1(c)(5)(i) which
relates to criminal aliens, not arriving aliens. Based on
this, it is evident that the Respondents' position as to
which section authorizes Petitioner's detention is anomalous
to the known facts on record.(See Fact No. 17, of the Joint
Statement of Uncontested Facts). (Previously submitted)

Although Petitioner is not an arriving alien, he has
requested for release through parole on two different
occasions from the District Director of the New Orleans
District, **Christine G. Davis.** The first request was denied,
and the second request was not responded to. See **Exhibit 3.**
(The first response from District Director **Christine Davis**)
as the government misled her, and she falsely alleged:

> "A careful review of the Service file indicates you
> are a native and citizen of Nigeria who arrived in
> the United States at New York, New York, on November
> 22, 1995, under the false identity of Mohammed Musa.
> You were paroled into the United States until
> November 22, 1996."

The **question** then presented for the Court's consideration
becomes, "Whether the above statement could be **true** in light
of the fact that the record indicates that Mr. Okonkwo's
conviction that formulated the basis for his initial
detention and deportation occurred on March 14, 1995,
eight months prior to his parole date?

The **question** taken in sum and calculated precisely
leads to no other presumption but to believe that the
Petitioner was actually present in the United States prior

-6-

to November 22, 1995 (the date he was granted advance parole).

The Respondents' denial of Petitioner's release on parole makes it clear that §236(c) is the basis for Petitioner's detention and § 235(b)(2). See **Exhibit 4.**(noting that Mr. Okonkwo is being detained under § 236(c)). Accordingly, the **question** presented here is purely a legal matter, whether it is justifiable to continue the unlawful detention of Petitioner pursuant to INA §236(c) in light of his conviction being **vacated,** or is his detention authorized under § 235(b)(2) as an arriving alien? Petitioner contends here that § 236(c) does not authorize his detention and neither should he be detained pursuant to § 235(b)(2) in lieu of the fact that he has been a permanent resident of the United States since September 6, 1990. Therefore, Petitioner respectfully urges this Court to hold that his removal proceedings should and must be **terminated** with prejudice to the government.

An exception to the exhaustion requirement is appropriate in certain circumstances, such as where an administrative appeal would be futile, or where a claimant raises a constitutional claim that could not be resolved through the administrative process. See **Howell v. INS,** 72 F.3d 288, 291 (2d Cir. 1995); **Chan,** 1997 WL 122783, 1997 U.S. Dist. LEXIS 3016, at *27. In the instant matter, Petitioner Okonkwo has been in detention over the facts disputed herein for a period of four years and the agency has yet to resolve same issues. Mr. Okonkwo raises five arguments in his petition: 1) that he

-7-

2) Petitioner has also identified himself as **"Musa Mohammed"**

3) Musa Mohammed is a religious name.

4) On or about June 20, 1990, Petitioner was legalized under his religious name Musa Mohammed, and his two other native names were also included in the application form as required. Other names used or known by (inlcuding maiden name, if married). He also specified in the application form that he have dual citizenship.

5) On September 6, 1990, INS issued employment authorization to Petitioner Okonkwo, as Musa Mohammed.

6) Also on September 6, 1990, INS issued a temporary resident card to Petitioner Okonkwo, as Musa Mohammed.

7) Petitioner subsequently departed the United States on August 19, 1995, for brief, casual and innocent visit, with advanced parole permission to re-enter in accordance with U.S. immigration law.

8) On November 22, 1995, 1995, Petitioner Okonwko, as Musa Mohammed, was paroled into the United States until November 22, 1996.

9) Petitioner on June 2, 2000, was charged as inadmissible to the United States because on March 14, 1995, he was convicted in the Superior Court, of Milford, Connecticut for the offense of larceny 6th degree, in violation of section 53a-125b of the Connecticut General Statutes.

-9-

is not an arriving alien 2) § 236 assuming arguendo his conviction is still valid does not retroactively apply to him 3) he has no conviction to form the basis of his removal and/or detention 4) he is a permanent resident of the United States since September 6, 1990 5) he should be released from the Respondents' custody. With respect to each of these claims, the agency either addressed the issue or a recognized **exception** to exhaustion applies.

Mr. Okonkwo's claims were decided by the Executive Office for Immigration Review (EOIR). The Immigration Judge ruled expressly that Mr. Okonkwo is subject to detention pursuant to § 236(c) and that he is an arriving alien and was thus ineligible for release on bond pursuant to the relevant statutes herein. On appeal, the BIA stated in a per curiam Order: "The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. 8 C.F.R. § 1003.1(e)(4)." Since these matters were ruled on at the administrative level, Mr. Okonkwo has exhausted his administrative remedies.

## BRIEF HISTORY OF THE CASE

1) Petitioner is a male native of Nigeria and has dual citizenship Nigeria/Ghana, whom prior to his admission to the United States as a non-immigrant F-1 student on June 15, 1982, visited the United States through Canada on June 25, 1982, to visit the universities of choice of attendance.

-8-

10) Petitioner on June 2, 2000, was erroneously charged as an arriving alien pursuant to section 212(d)(5) of the Immigration and Nationality Act.

11) The provision at issue became effective from April 1, 1997, after Petitioner was charged as being in the United States without valid documents.

12) On October 30, 2000, Okonkwo's conviction in the Superior Court of Milford, Connecticut was **vacated** by the Court because the "[d]efendant not adequately advised of his rights at the time of plea. **(See Fact No. 1, 2, 3, 4, 5, 7, 12e & 24 of the Joint Statement of Uncontested Facts).**

## ARGUMENT

In light of the favorable change in circumstances, on or about October 30, 2000, Petitioner's conviction upon which his detention and deportation are based was **vacated**, because the "[p]etitioner not adequately advised of rights at time of plea.

On or about November 8, 2001, the Board of Immigration Appeals granted Petitioner's motion to reopen and remanded the proceedings to the immigration judge, to consider the **vacation** of Petitioner's criminal conviction and to determine whether Petitioner can establish his eligibility for relief from removal or seek termination. See **(Exhibit "5", Board Decision)**

On or about July 11, 2002, Petitioner discovered during writ trial that he was issued a temporary resident card

-10-

since September 6, 1990, when in fact the government was
withholding it, and falsely alleged that he was not issued a
temporary resident card, that he was only issued work authorization.
Based on the favorable changes in circumstances Petitioner
retained an attorney by name **H. Todd Nesom** who in turn
promised to secure Petitioner a bond as he is not an arriving
alien contrary to what the Respondents allege, and the attorney
requested a sum of $750.00 for the bond hearing, that if paid,
Petitioner will spend the 2001 christmas with family. When
the fee was paid, Petitioner never had a bond hearing, rather
the allegation was that District Counsel for the Service,
**Mr. Carl E. Perry** said:

> 'That he will do anything and everything to ensure
> Petitioner's deportation back to his country,
> irrespective of the fact that his conviction has
> been **vacated**', that he will rather die than to see
> Petitioner released from custody, and will likely
> deny Petitioner's petition for adjustment of status,
> which is an unethical statement.

See **exhibit "6"** at 2 (**Motion for relief of counsel with sworn
affidavit**)

On or about August 6, 2002, during the removal
proceedings, Petitioner brought to the attention of the
immigration judge, that the said resident card the Respondents
argue was never issued, was actually issued on September 6,
1990. When the immigration judge saw with me and noted that
something is wrong, stated:

> I am getting tired of this case, I'm about to get
> rid of it. I am surprised to hear that the Petitioner
> was issued a temporary resident card since September
> 6, 1990, here we are waiting for another.

-11-

See **exhibit "6" at 3.** As a result of favorable changes in circumstances, Petitioner is not an arriving alien as alleged by the Respondents and since these matters were ruled on at the administrative level, Petitioner has exhausted his administrative remedies. Now the **question** to this Court is:

1. **Whether in light of the favorable change in circumstances, whether the Board of Immigration Appeals abused its discretion, when it affirmed the Immigration Judge's decision without opinion, that the decision below is therefore, the final agency determination. Citing 8 CFR 1003.1(e)(4).**

> **Suggested answer: Affirmative.**

Petitioner submits to this Court that he is not an arriving alien without valid documents in the United States, rather as an alien with a temporary resident card who obtained advance parole, in accordance with U.S. immigration law, prior to his brief, casual, and innocent departure on August 19th, 1995. Both the immigration court and the Service **conceded** without objection that Petitioner was issued a "temporary resident card" on September 6, 1990, that has substantially changed Petitioner's status from that of an alien without valid documents to one with a valid document. **(See Fact No. "5" of the Joint Statement of Uncontested Facts).**

The crux of the issue before the Court is whether Petitioner is an arriving alien to bar him from bond redetermination. Petitioner submits that the IJ in its Master Calendar hearing of August 25, 2000, **conceded** that Petitioner had "advance parole", and the Service (INS) failed to object to such findings.

-12-

The IJ in its prior decision dated August 25, 2000, stated:

> "The Respondent (herein Petitioner) testified that when he needed to travel to Nigeria in 1995, he contacted the Service and was issued a document. Although he could not recall what it was, I concluded and counsel for the Respondent agreed, that the document was an advance parole". See (**Exhibit "7" at 3, paragraph 2**)

This concession should not now be in oblivion to bar Petitioner from being granted this bond request.

Furthermore, Petitioner will show that:

> "An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act, **except** that an alien who was paroled before April 1, 1997, or an alien who was granted advance parole in the United States, shall not be considered an arriving alien for purposes of section 235(b)(1)(A)(i) of the Act". See **Exhibit "8" The statute for an arriving alien, and Department Motion for Summary Affirmance to the Board)**

In this instance, Petitioner should not be considered as an arriving alien because he was paroled before April 1, 1997, the effective date of the provision; and was also granted an advance parole that was applied for and obtained in the United States prior to his leaving Nigeria.

In light of **St.Cyr v. INS,** 121 S.Ct. 2271 (2001), the Service shall both retroactively apply this provision to Petitioner to disturb his release on bond.

Petitioner submits that he qualifies for a bond since the issue of being an arriving alien has been **negated** by the temporary resident card, issued since 1990, and employment

-13-

authorization granted, as a class member in **Catholic Social
Services** (CSS) v. **Reno,** 113 S.Ct. 2485 (1993).

**II. Whether it is constitutional to continue the unlawful
detention of Petitioner as an arriving alien, when in fact
Petitioner is not an arriving alien and has been detained
under section 236(c), which     retroactively does not apply
to him.**

                **Suggested Answer: Negative.**

Respondent failed to provide legitimate grounds of

Petitioner's detention. As aforementioned, section 236 of the

Act, derives its authority to detain an alien from an alien's

conviction, which falls within the enumerated list of offenses

in the provision of INA § 237(a)(2)(A)(iii), (B), (C), and

(D). **Id.** The Respondents unlawfully detained Petitioner under

section 236 of the INA, is unconstitutional, if applied to

Petitioner. However, the conviction upon which Petitioner's

detention was predicated was **vacated** on October 30, 2000. **Id.**

Additionally, the controversial allegation that Petitioner

is inadmissible and removable because he entered the United

States without valid documents could not properly support

Petitioner's "mandatory detention" without affecting the

Due Process Clause of the United States constitution.

One of the sections amended by the IIRIRA was the

mandatory detention provision for criminal aliens, INA §

236(c), so the INA § 236(c) did not become effective until

October 9, 1998. That section is now codified at 8 USC

§ 1226(c). The mandatory detention provision does not apply

to individuals who were released from prison prior to October 9, 1998 (**the date this subsection came into effect),** but only to those who were released after that date. See **Velasquez v. Reno,** 37 F.Supp. 2d 663, 670-73 (D.N.J. 1999). Congress has expressly provided that 8 USC § 1226(c) is to be applied only prospectively to aliens who were released from criminal custody after the statute took effect. **Id. at 670** (citing **Mathews v. Kiddler, Peabody and Co. INC;** 161 F.3d 156, 160-61 (3d Cir. 1998).

The transitional rules expired on October 9, 1998, and therefore, by virtue of the express terms of the IIRIRA 8 USC section 1226(c) does not apply to Petitioner who was released before, and long before October 9, 1998. **Velasquez,** at 671. The terms of section 236(c) itself support the conclusion that it was intended to apply only to aliens released after the statute became effective. **Grant v. Zemski,** 54 F. Supp. 2d 437 (E.D. Pa. 1999).

Accordingly the relief requested is clear, as the Petition illuminates the relevant facts, which identifies these substantive laws. **Adickens v. S.H. Kress and Co.,** 398 U.S. 114 90 S.Ct. 1598, 26 L.Ed 2d 142 (1970).

**III. Whether Petitioner's detention without an individualized hearing on risk of flight violates Petitioner's Fifth Amendment Due Process Rights?**

**Suggested Answer: Affirmative.**

Due Process Clause applies to all 'persons' within

the United States, including aliens, whether their presence here is unlawful, temporary or permanent. **Zadvydas v. Davis,** 150 L. Ed. 2d 653, 533 U.S. 678, 121, 2491, 2499-2500.

The constitution requires "no person shall be... deprived of life, liberty, or property, without due process of law. **U.S. Const. Amend. V.** It also provides:

> "Nor shall any state... deny to any person within
> its jurisdiction the equal protection of the laws."
> **U.S. Const. Amend. XIV.**

As the **Doherty** Court stated, in 943 F.2d at 208. The term 'person' "does not differentiate between citizens and non-citizens, but is broad and inclusive." Thus, the Due Process Rights extend even to aliens "whose presence in this country is unlawful." See **Mathews v. Diaz,** 426 US 67, 77, 96 S.Ct. 1883, 48 L.Ed. 2d. 478 (1978). See also **Rogowski,** supra at 183.

At the outset, the issue remains **whether** Petitioner could be mandatorily detained pending final administrative processing of Petitioner's application for adjustment of status, without any opportunity for an individual determination of Petitioner's risk of flight, when the conviction upon which Petitioner's initial detention has been **vacated.**

These **questions** were recently answered in **Patel v. Zemski,** no. 01-2398, 2001 U.S. App. Lexis 26097 (3rd Cir. 2001), and **Radonic v. Zemski,** 121 F. Supp. 2d 814 (E.D. Pa. 2000), aff'd January 4, 2001.

-16-

The law of some of this Circuit's Courts states:

"[M]andatory detention of aliens after they have
been found subject to removal but who have not
yet been ordered removed because they are pursuing
their administrative remedies violates their due
process rights unless they have afforded the
opportunity for an individual hearing at which they
can show that they do not pose a flight risk or
danger to the community".

The Court further held Radonic was constitutionally
entitled to an individualized assessment of the flight risk
and danger to the community on a **[current]** basis. Petitioner
will address the relevant facts and their applicability to
the factors that will determine whether he should be released
or detained.

The regulatory statutory scheme upon which Petitioner
is being detained does not authorize detention without a
bond. In fact, the regulation "as applied" to Petitioner have
an impermissible retroactive application in this case in light
of **INS v. St. Cyr**, 121 S.Ct. 2271 (2001). Additionally,
Petitioner is a beneficiary of the **"exception"** to the
regulatory scheme. (See Fact No. **7, of the Joint Statement
of Uncontested Facts)** "He was paroled into the United States
until November 22, 1996." **Id.**

It is undisputed that Petitioner sought and obtained
advance parole in 1995, from the Service prior to embarking
on his journey to Nigeria. See **Exhibit "7"** (I.J. Decision
of August 25, 2000 at page 3). <u>See</u>,

-17-

"[T]he term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry or an alien interdicted in international water and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act, [except] that an alien who was paroled before April 1, 1997, or an alien who was granted advance parole which the alien applied for and obtained in the United States prior to the alien's departure [from] and return to the United States, [shall not] be consideredd an arriving alien for the purposes of section 235(b)(1)(A)(i) of the Act."

A simple review of the undisputed facts of this case in conjunction with the **"exception clause"** provision of the regulatory mandate, the issue remains **whether** Petitioner was properly classified as an "arriving alien", or **whether** this provision "as applied" to Petitioner is constitutional.

**IVI. Whether a straight forward reading of the statutory provision at issue, in conjunction with uncontested evidence of the administrative record, the application section 212(a)(7)(A)(i)(I) of the Act is constitutional?**

Suggested Answer: Negative.

Petitioner's challenge to section 212(a)(7)(A)(i)(I) is not directed to its constitutionality, rather, it is directed to its erroneous application to Petitioner's circumstances. An "as applied" challenge is distinguished from a facial challenge by which it is asserted that the statute is "invalid

in toto," or that there are no circumstances in which the
statute can be constitutionally valid. **Village of Hoffman v.
Flipside Hoffman Estate Inc.,** 455 U.S. 489, 494, 102 S.Ct.
1186, 1191, 71 L.Ed 2d 362 Fn.5 (1981), See also, **United
States v. Mallory,** 884 F. Supp. 496 (S.D. Fl. 1995) (Where
the court dismissed an indictment and held the Federal Car
Jacking, 18 USC § 2119 unconstitutional "as applied" because
the indictment charged nothing other than local crime).

Petitioner contends that his "as applied" challenge
to the statutory provision at issue is properly before the
court, as it implicates statutory and constitutional claims.

Assuming arguendo that Okonkwo is an arriving alien,
courts reviewing the mandatory detention of arriving aliens
found it to be unconstitutional. See e.g. **Zgombic v.
Farquhason,** supra, [finding mandatory detention of arriving
aliens to be unconstitutional]; **Radonic v. Zemski,** 121 F. Supp.
2d. 814 (E.D. Pa. 2001), affirmed, 48 Fed. Appx. **113** (3rd
Cir. 2001) [Mandatory detention of an arriving alien is
unconstitutional]. **Martinez v. Greene,** 28 F. Supp. 2d. 1275
(D. Colo. 1998), appeal dismissed and motion to vacate denied,
No. 99-1067, 1069, 1071, 1072 (10th Cir. 1999).

Most recently, a court in the Eastern District of
Pennsylvania in **Alaka v. Elwood,** 225 F. Supp. 2d. **547**
(E.D. Pa. 2002), concluded in a very cogent, well-reasoned,
and thoughtful opinion that "... the detention of lawful
permanent resident **"arriving alien"** after they have been

19-

found subject to removal but who have not yet been subject because they are pursuing their administrative remedies violates their due process rights unless they have been afforded an opportunity for an individualized hearing at which they can show that they do not pose a flight risk or danger to the community." **Id** citing **Radonic**, supra [noting the "arriving aliens" who are **not** even lawful permanent residents are entitled to a bond hearing"] **Alaka** at pg. 560 n. 62.

Okonkwo's case is even more compelling than the Alaka and Radonic's cases cited above, these aliens were subject to removal for criminal convictions, Okonkwo does not currently have any criminal conviction as the lone conviction forming the basis of his removal proceedings has been **vacated.**

This Court has long followed direction from the Supreme Court, and ruled that mandatory detention without individualized hearing on risk of flight or danger to the community violates Fifth Amendment Due Process Rights "as applied" to the Petitioner's type of circumstances as unconstitutional. It should therefore grant this petition ordering Okonkwo's immediate release as the Government can not prove that reasonable minds could as to the imports of evidence and cases cited herein.

## CONCLUSION

### PRAYER FOR RELIEF

**WHEREFORE,** for all the foregoing reasons, Petitioner

prays this Honorable Court grant the following relief:

(1) Issue a Writ of Habeas Corpus, directed to the Respondents/Defendants ordering them to release Petitioner immediately on his own recognizance or on a reasonable bond, and declaring that 8 USC § 1226(c) is unconstitutional as applied to Petitioner, in this case and ordering that the Petitioner be granted an individualized bond hearing before the immigration court forthwith.

(2) Issue an Order declaring that Respondents/Defendants conduct is unconstitutional and illegal for the following reasons:

a. Because it violates the Petitioner's substantive due process right under the Due Process Clause of the Fifth Amendment to the United States Constitution.

b. Because it violates Petitioner's procedural due process rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

(3) Order the Respondents/Defendants to release Petitioner's resident card, that was issued to Petitioner on September 6, 1990.

(5) Grant any other and further relief that this Honorable Court may deem fit and proper.

Respectfully submitted,

Dated: November 21, 2003

Ignatius Okonkwo
16057-265
FDC-OAK
P.O. Box 5010
Oakdale, La 71463

-21-

## CERTIFICATE OF SERVICE

I certify that on this 21st day of November, 2003, I served true and correct copies of the foregoing 'Supplemental Petition on Writ of Habeas Corpus' upon the opposing party via U.S. Mail, Postage Prepaid, First Class, and addressed to:

William M. Brown, Jr.
Assistant United States Attorney
P.O. Box 1824
New Haven, Ct. 06508

Ignatius Okonkwo