EXHIBIT "18"

U.S. Department of Homeland Security
P.O. Box 648004
Lee's Summit, MO 64064



U.S. Citizenship
and Immigration
Services

February 17, 2004

Ignatius Okonkwo
803 Center Street
Manchester, CT 06040

File:   MSC#02-341-60189
        A#26-792-202
        Form I-485

In RE: Same as above

## Notice of Decision

This letter is in reference to your Application to Register Permanent Residence or Adjust Status (Form I-485) that you filed on September 6, 2002 under the Legal Immigration Family Equity Act (LIFE Act). Section 1104 of the LIFE Act and its Amendments provide for the legalization of certain eligible aliens who filed a written claim for class membership in the following legalization class action lawsuits: *Catholic Social Services, Inc. (CSS), League of United Latin American Citizens (LULAC)* or *Zambrano*.

Pursuant to Title 8, Code of Federal Regulations, Part 245a.20(a)(2), you were notified of our Intent to Deny your Form I-485 on January 13, 2004. The reason(s) for the intent were provided to you at that time and you were afforded a period of thirty (30) days to provide evidence in support of your application. To date, there has been no response to our notice. Therefore, the Service has made a decision based upon the evidence submitted with your original application.

A review of Service records and indices, your administrative file, and all evidence previously provided by you with your original application fails to establish your claim. Evidence submitted consisted of Form I-485 Rejection and Receipt notices, a copy of your marriage certificate, a copy of your Employment Authorization Document (EAD) under c22 category, a copy of Form I-20AB, Certificate of Eligibility for Non-Immigrant (F-1) Students, a copy of Form I-538, Application by Nonimmigrant Student for Extension of Stay, a copy of a Fingerprint Fee Receipt from the Texas Service Center, copies of your Nigerian passport pages, a copy of your college diploma, copies of money orders, a copy of your resume, a copy of a medical bill, copies of airline tickets, a copy of postmarked mail, copies of letters from the Belgian World Airlines, a copy of a damaged baggage report, and copies of affidavits attesting to your identity. While these documents do provide evidence of your identity and residency, they do not offer any proof that you filed a written claim for class membership.

You also submitted a copy of a Form I-687 Receipt Notice dated June 13, 2001 and a copy of a Vermont Service Center letter regarding your Legalization Questionnaire dated March 31, 2001. The questionnaire was evaluated as part of a separate program in order to determine whether you may be able to file for legalization and to have your application (Form I-687) evaluated as if it had been filed during the original May 1987-May 1988 filing period. Based on your questionnaire the Service advised you that you were

www.uscis.gov

eligible to send a Form I-687 to the Texas Service Center for adjudication. Service records show that your Form I-687 was received at the Texas Service Center on June 13, 2001. But the Legalization Questionnaire from March 2001 cannot serve to establish that you made a timely written claim for class membership in order to qualify for adjustment under the LIFE Act. The LIFE Act defines eligible aliens as those who filed with the Attorney General written claims for class membership before October 1, 2000. It provides for a variety of means for proving that a claim for class membership was made, but a questionnaire filed in March 2001 simply cannot serve to meet the timely filing requirements of the LIFE Act.

In addition, you submitted many forms belonging to a Mohammed Musa, A 93 028 854. You submitted a copy of his Form I-688, a copy of his Form I-689 legalization receipt, a copy of his Form I-687 signed on June 20, 1990, a copy of an appointment notice dated August 16, 1990, and a copy of his Form for Determination of Class Membership in CSS v. Meese signed on August 23, 1990. While you have listed one of your other names used as Mohammed Musa on your Form I-765, <u>you have not provided any proof of a legal name change</u>. Besides the name and A-number differing from your own, Forms I-687, I-688, I-689, the appointment notice, and the Form for Determination of Class Membership all have a different date of birth <u>listed that does not match the date of birth listed on your Form I-485.</u> These factors raise serious questions about the authenticity of any of the forms submitted for a Mohammed Musa.

Service records also indicate that you have another A-number, A 93 410 158. However, a search of Service indices fails to reveal anything under this A-number that would indicate a claim for class membership has been filed.

Service records have failed to reveal anything that would indicate a timely written claim to class membership had ever been filed. Therefore, it has been determined that you are ineligible to adjust status under Title 8, Code of Federal Regulations, Part 245a.10 which states:

"An eligible alien means an alien . . . who, before October 1, 2000, filed with the Attorney General a written claim for class membership, with or without filing fee, pursuant to a court order issued in the case of: *Catholic Social Services, Inc. v Meese, League of United Latin American Citizens v. INS,* or *Zambrano v. INS.*"

The evidence you submitted does not establish that you filed a timely written claim for class membership in one of the legalization class action lawsuits mentioned above. Therefore, your application pursuant to section 1104 of the LIFE Act is hereby denied.

Per Title 8, Code of Federal Regulations, Part 245a.20(b), you may appeal this decision to the Administrative Appeals Office by completing the enclosed Notice of Appeal (Form I-290B) and mailing it, along with a $110.00 filing fee, to the following address:

> U.S. Citizenship and Immigration Services
> National Benefits Center
> Post Office Box 7219
> Chicago, IL 60680

Your Notice of Appeal must be filed within thirty (30) days of this notice. A brief or other written statement in support of your appeal may be submitted with the Notice of Appeal. If no appeal is filed within the time allowed, this decision is final.

Sincerely,

Robert M. Cowan
Director

RMC/Officer #: LA-102

1 Attachment

E X H I B I T   "19"

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
OAKDALE, LOUISIANA



IN THE MATTER OF:               )
                                )
IGNATIUS OKONKWO                )
  aka: NWANKEONU CHUKWUDUKEN    )   A26 792 202
       MUSA MOHAMMED            )   Oakdale, LA
Respondent                      )
                                )
IN BOND PROCEEDINGS             )

OPPOSITION TO MOTION TO RECONSIDER BOND

COMES NOW, the Immigration and Naturalization Service (hereinafter "the Service"), opposes the respondent's motion to reconsider for the following reason:

In an oral decision rendered on July 24, 2000, the Immigration Judge ruled that the respondent was an "arriving alien", and as such, he lacked jurisdiction over the respondent's bond proceedings.

The respondent is a native and citizen of Nigerian. His initial arrival in the United States was on June 15, 1982 at New York, New York as a nonimmigrant student. He departed the United States. He was paroled into the United States at or near New York, New York on or about November 22, 1995 to November 22, 1996 under the alias of Musa Mohammed. See Nonimmigrant Information System (NIIS) dated June 12, 2000 with INS Status Codes attached. "An alien who is paroled under section 212(d)(5) or permitted to land temporarily as an alien crewman shall not be considered to

1

have been admitted." See section 101(a)(13)(B) of the Act. The Code of Federal Regulations defines the term "arriving alien;"

> (g) The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States water and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act, except that an alien who was paroled before April 1, 1997, or an alien who was granted advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, shall not be considered an arriving alien for purposes of section 235(b)(1)(A)(i) of the Act.
>
> See 8 C.F.R. § 1.1(g)(2000)

An arriving alien who arrives in the United States pursuant to a grant of advance parole is an "arriving alien", as that term is defined in the federal regulation. Matter of Oseiwusu, Interim Dec. 3344 (BIA 1998).

A motion to reconsider asserts that at the time of the Board's previous decision, an error was made. It is a "request that the Board reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." Matter of Cerna, 20 I&N Dec. 399, at 402 n.2 (BIA 1991)(quoting Hurwitz, Motions Practice Before the Board of Immigration Appeals, 20 San Diego L. Rev. 79, 90 (1992)). The regulations require that a motion to reconsider shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall

2

be supported by pertinent authority. 8 C.F.R. § 3.2(b)(1)(2000).

The Service instituted deportation proceedings by the issuance of an Order to Show Cause on March 3, 1987. The respondent was granted voluntary departure until January 15, 1988 but failed to depart. A demand was made upon a bonding company to produce the respondent. Due to the respondent's failure to appear for deportation on May 31, 1988, his $4000 bond was breached. <u>He filed a legalization application on or about June 20, 1990 with the Service and was granted employment authorization as a class member in</u> Catholic Social Service (CSS) v. Reno, 113 S. Ct. 2485 (1993). There is no evidence in the alien registration file that the respondent had applied for or was granted advance parole before his departure from the United States. At the time of his arrival, he was inadmissible to the United States as an alien convicted of a crime involving moral turpitude. On March 14, 1995, he was convicted in the Superior Court, Milford, Connecticut for the offense of Larceny Sixth Degree, in violation of Section 53a-125b of the Connecticut General Statutes.

As an "arriving alien", the Immigration Judge may not redetermine conditions of custody imposed by the Service with respect to aliens who are "arriving aliens" in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act after the expiration of the Transition Period Custody Rules. See 8 C.F.R. § 3.1a(h)(2)(i) (2000).

3

For the foregoing reason, the Service opposes the respondent's motion to reconsider.

Respectfully submitted,

11 August 2000
DATE

LORRAINE L. GRIFFIN
Assistant District Counsel
Immigration & Naturalization
Service, Litigation Unit
1010 East Whatley Road
Oakdale, Louisiana  71463
(318) 335-0713, ext. 139

4

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have served a copy of the government's response on counsel for the respondent or the respondent via first-class mail by depositing the same in the United States mail, postage prepaid on the 11th day of August, 2000, addressed to:

Michael G. Moore, Esq.
20 Maple Street
Springfield, MA  01103

BRENDA F. BATY
Legal Clerk

E X H I B I T   "20"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IGNATIUS OKONKWO,
        Petitioner

v.

IMMIGRATION AND NATURALIZATION
SERVICE,
        Respondent

: No. 4:CV-00-2057
:
: (Judge Muir)
:
:
:
:
:

FILED
HARRISBURG PA
JAN 17 2002

## SUPPLEMENTAL RESPONSE TO ORDER TO SHOW CAUSE

### Introduction

Petitioner Ignatius Okonkwo filed his "Emergency Stay of Removal," which was construed by the Court as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, on November 27, 2000. By Order dated November 28, 2000, the Court directed respondent to file a response and enjoined respondent from removing petitioner from the United States during the pendency of this action. Meanwhile, on November 20, 2000, Mr. Okonkwo had filed a petition for review of his Final Order of Removal in the United States Court of Appeals for the Third Circuit, Okonkwo v. Attorney General, #00-3852. On February 2, 2001, this Court issued an Order staying this case until disposition of the then pending Motion to Dismiss the Petition for Review, requiring respondent to submit periodic status reports, and requiring respondent to notify the Court within fifteen days of disposition of the Petition for Review. On October 19, 2001, the Third Circuit Court of Appeals dismissed Mr. Okonkwo's Petition for

Review. Respondent notified this Court of the dismissal in a status report filed on December 12, 2001. The Court issued an Order on December 18, 2001, directing respondent to file a supplemental response to the petition for habeas corpus, and directing respondent to file all documents filed in Mr. Okonkwo's case in the Third Circuit. Respondent submits the within response, and the accompanying documents from the Third Circuit case, in accordance with the Court's Order.

### Factual Background

Mr. Okonkwo is a native and citizen of Nigeria. Attachment to "Emergency Stay of Removal" (hereinafter "petition"), third unnumbered page (Notice to Appear). He entered the United States as a non-immigrant student in 1982. Petitioner's Declaration in Support of His Response to Respondent's Response to Order to Show Cause ("Pet. Decl."), ¶ 6. He left the United States in 1988 and returned in 1989. Id., ¶¶ 8, 10. In 1990, petitioner filed an application to adjust his status to lawful permanent resident. Id., ¶11. The undersigned has been informed by INS District Counsel that Mr. Okonkwo's application is still pending. Mr. Okonkwo, however, asserts that his application was recently approved. See Pet.'s December 19, 2001, Status Report, ¶ 1.

On March 14, 1995, he was convicted in the Superior Court of Milford, Connecticut, of larceny in the 6th degree. Attachment to Pet. (Notice to Appear). He thereafter departed from the

2

United States and returned on or about November 22, 1995. Id. He was paroled into the United States until November 22, 1996. Id. On June 2, 2000, respondent issued to petitioner a Notice to Appear, alleging that petitioner was inadmissible and removable because he had entered the United States without valid documents and because he had been convicted of a crime of moral turpitude. Attachment to Pet. (Notice to Appear).[1] A Final Order of Removal was issued by the Board of Immigration Appeals on October 12, 2000.

On or about October 30, 2000, Mr. Okonkwo's conviction was vacated by the Connecticut court. Attachment to Pet., at unnumbered page 4 (Order of Superior Court of Connecticut). Thereafter, on November 20, 2000, Mr. Okonkwo filed a petition for review of the Final Order of Removal in the United States Court of Appeals for the Third Circuit, Okonkwo v. Attorney General, #00-3852. After hearing oral argument on December 13, 2000, the Court of Appeals entered an order staying petitioner's removal, without prejudice to his right to file a timely motion to reopen before the Board of Immigration Appeals advising the BIA of the vacation of the Connecticut conviction. See Exhibit 1 to respondent's Motion for Enlargement of Time. On December 19, 2000, the Court of Appeals issued an order to stay the briefing

---

[1] Petitioner claims that his entry into the United States was not without any valid entry document, as charged by the INS. Pet. Decl., ¶¶ 12, 16 - 18.

3

schedule and the filing of the administrative record pending resolution of the government's motion to dismiss or transfer. The Court of Appeals lifted the stay and dismissed the Petition for Review on October 19, 2001.

Petitioner states that he filed a motion to reopen with the Board of Immigration Appeals on December 20, 2000. Pet. Decl., ¶20. The BIA decision on his motion to reopen, however, states that the Board received the motion on February 14, 2001, and rejected it on February 21, 2001. It was then properly filed on March 27, 2001. See Attachment to Respondent's Status Report, filed with the Court of Appeals on or about June 4, 2001. The BIA denied the motion to reopen, stating:

> The previous Board order dismissed [Okonkwo's] appeal for lack of jurisdiction, because it was untimely filed. When an appeal is dismissed for lack of jurisdiction, the only motion that can be entertained by the Board is a motion to reconsider which challenges the finding that the appeal was untimely. The motion before us is not a motion to reconsider. Therefore, we find that we have no jurisdiction over this motion, as jurisdiction lies with the Immigration Judge. See Matter of Mladineo, 14 I&N Dec. 591 (BIA 1974). See also Matter of Lopez, Interim Decision 3343 (BIA 1998).

Id. Respondent would note that, in filing his motion to reopen with the BIA, Mr. Okonkwo was apparently following the suggestion of the Court of Appeals in its December 13, 2000, Order.

According to the Status Reports filed by petitioner in the Court of Appeals, he has continued to attempt to seek relief through administrative procedures. He filed a motion to reopen

4

with the immigration court on December 18, 2000, which was denied, apparently on February 15, 2001. June 11, 2001 Status Report, ¶¶ 1 and 8. He filed a motion for bond on February 6, 2001, which was denied.[2] *Id.*, ¶ 4. On March 26, 2001, he filed with the BIA a motion to reconsider the IJ's February 15 denial of his motion to reopen. *Id.*, ¶ 8. On May 31, 2001, petitioner filed a motion for reconsideration with the BIA and a motion to reopen with the immigration court. June 29, 2001 Status Report, at 1. A hearing before an immigration judge was held on January 11, 2001. Because Mr. Okonkwo is attempting to obtain lawful permanent resident status, the immigration judge continued that hearing for four months to permit him to do so.

### Questions Presented

1. Whether, on the record before the Court, the petition for habeas corpus should be granted?

   Suggested answer: Negative

### Argument

The procedural course of this action is so convoluted as to be virtually impenetrable. At present, however, it appears that Mr. Okonkwo has a pending petition to reopen and a pending application for adjustment of status.[3] As a result, he has not

---

[2] Petitioner claims the denial was back-dated, but has presented no evidence in support of that claim.

[3] Obtaining lawful permanent status would enable Mr. Okonkwo to have the removal proceedings terminated.

yet exhausted his administrative remedies.

Ordinarily, a writ of habeas corpus will not issue to a prisoner who has failed to exhaust available state or administrative remedies. Salazar v. Reich, 940 F. Supp. 96 (S.D.N.Y. 1996) (alien seeking release on bond pending determination of his application for political asylum and deportation proceeding must exhaust administrative remedies). *See generally* O'Sullivan v. Doerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 1733 (1999) (in order to satisfy the exhaustion requirement a petitioner for a federal habeas review is required to present claims to the state supreme court even though its review might be discretionary). It is petitioner's burden to establish that he has exhausted all administrative remedies. *See, e.g.,* Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *cert. denied*, 522 U.S. 833 (1997) citing Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994).

Exhaustion of administrative remedies serves two purposes: protecting administrative agency authority and promoting judicial efficiency. *See,* McCarthy v. Madigan, 503 U.S. 140 at 145; Facchiano v. U.S. Dep't of Labor, 859 F.2d 1163, 1166-67 (3d Cir. 1988); Bethlehem Steel Corp., 669 F.2d at 907. The exhaustion doctrine acknowledges that administrative agencies, not the courts, should have the primary responsibility for the programs they are charged to administer by Congress; it permits the

6

agencies to exercise and apply their special expertise relating to matters that they are charged to administer; and it permits agencies the opportunity to correct their own mistakes with respect to the programs they are charged to administer. See e.g., Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994) (exhaustion of administrative remedies required where the issues presented involved the parties' rights and duties under a statute that fell "squarely within the Commission's expertise").

Respondent would note that petitioner has raised several issues which fall within the area of INS expertise, and which can best be addressed administratively in the first instance. First, Mr. Okonkwo claims, and has submitted evidence to show, that the conviction listed on his Notice to Appear has been vacated. Recognizing that the Notice to Appear contained two charges, he also asserts a defense to the charge that he entered the country without valid entry documents: he claims that a letter from the American Embassy in Lagos, Nigeria, authorizing a common carrier to transport "Mohammed Musa" to the United States, along with an employment authorization card, are evidence of legal entry.[4] Because both defenses involve factual issues as well as legal ones, they should be resolved in the first instance at the agency level.

---

[4] Attached to his December 19, 2001 Status Report, petitioner also attaches a currently valid employment authorization card.

7

In addition, Mr. Okonkwo has an application for lawful permanent residence pending. His entitlement to such status should first be determined through the administrative Mr. procedure.

Mr. Okonkwo has suffered considerable frustration in attempting to pursue his administrative remedies. To his credit, he has persisted, and is now receiving consideration of his claims.

### Conclusion

For the reasons set forth above, this Court should deny the within petition for writ of habeas corpus without prejudice, or, in the alternative, stay this proceeding pending resolution of petitioner's administrative claims.

                      Respectfully submitted,

                      MARTIN C. CARLSON
                      United States Attorney

                      */s/ Mary Catherine Frye*
                      MARY CATHERINE FRYE
                      Assistant U.S. Attorney
                      228 Walnut Street
                      Harrisburg, PA 17108
                      (717) 221-4482
                      Attorneys for Respondent

Dated: January 17, 2002

# EXHIBIT 1