UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT
HARTFORD, CONNECTICUT

IGNATIUS UMEADI OKONKWO )
    PETITIONER, ) CIV. NO. 3:02CV1733
    — V — ) (A.W.T)
JOHN ASHCROFT, ET. AL., )
    RESPONDENT )

NEW DISCOVERY, UP TO DATE STATUS
REPORT

(1) On or about March 25, 2004, petitioner Okonkwo, sent all the necessaries documents, to Chicago, Service center, to prove that petitioner Okonkwo, is Musa Mohammed, and that he filed a timely written claim for class membership in the Catholic Social Social (CSS) V. Reno, 113, S.ct 2485, on or before October 1, 2000. Petitioner sent it with certified mail receipt and return mail receipt. The certified mail receipt was stamped March 25, 2004, showing that the mail left that very day; whereas, the return mail receipt came back unsigned showing that they didn't received it. Petitioner was worried and knew something is wrong. (See Exhibit I - The certified mail receipt stamped March 25, and the unsigned returned mail receipt).

(2) On march 28, 2004, petitioner Okonkwo, sent a briefing schedule, to clarify the cloudness eng-enders by these convoluted record of these petition. petitioner sent it by certified mail and return mail recoipt. The certified mail receipt, was placed at the back of the envelop, because there is no room, in the front of the envelop. The mail was sent back to me, on April 1, 2004, through my counselor paul Drexel, saying, it was returned because, I placed the certified recoipt at the back of the envelop. petitioner worked at united states, post office for years, but have never had such things. The twenty two (22) stamps on the mail was stamped, and can not be re-used again. These was done in R and D mail room, where the INS is doing their Receiving and Delivering. (See Exhibit 2 - The returned envelop and the twenty two (22) stamps that was destroyed, and the back of the envelop, where the certified mail was placed).

(3) The same day, thursday the April 1, 2004, petitioner re-addressed a new envelop with stamps, and re-sent the same mail back again, to the chicago Service Center. The mail was returned back again, through counselor Senegal, around

12:45 p.m Central time, with a small note alleging insufficient stamps. On the evening, the same day, around 7:30 p.m Central time, petitioner received a certified mail receipt dated April 1, 2004, showing that the same mail I have in my possesion has left. (See Exhibit 3 - A copy of the returned mail in my possession, small note saying insufficient stamps, and certified mail receipt showing that the mail has left.)

(4) On or about April 7, 2004, around 10:30 a.m Central time, petitioner unit manager Mr. Chavez, sent Counselor Senegal, to aide petitioner make a legal calls to Chicago Service Center, to know the status of his petition and whether they received the certified mail, he sent them, with the returned mail receipt unsigned. Petitioner called and spoke to a Customer Service personnel by the name of "Donna" #6203, requesting for the status of my petition and whether the Chicago Service Center, received the certified mail and with the documents I sent them. In respond, she told me, that there is no indication showing that the Service Center, received any documents or certified mail from me. She also stated, that neither Chicago Service Center, nor Missouri Service Center, made a decision on my petition. That my application

notification, with no service address.)
Now the first was issued on September 6, 1990, under my religious name, and Oakdale, deportation center, is sitting on it. The second, was approved under my native name, and was transferred from Mesquite, Texas Service Center, to Oakdale, deportation Center, at their request, and uptill date, petitioner don't know the status of that application. (See Exhibit 6 — The transfer notice, from Mesquite, Texas.)

(5) On or about March 11, 2004, During the removal proceedings, petitioner received a "Notice of Decision", in the immigration Court, from the INS counsel Mr. Jerry A. Beatmann, trying to misled the court, saying that Missouri Service center, has made their decision, saying "pursuant to section 1104 of the Life Act, your application is hereby denied. Because the evidence you submitted does not establish, that I filed a timely written claim for class memberships in one of the legalization class action Lawsuit on or before October 1, 2000." Petitioner objected, and told the immigration Judge, that the decision is not right, is fraudulent, because petitioner received a transfer Notice, that my petition has been transferred to Chicago service Center, not knowing that it was Chicago service center,

was transferred to Oakdale, Louisiana, at their own request, on February 17, 2004, and that they sent me, a transfer notice, that they do not have jurisdiction over my petition. The Oakdale, Louisiana, deportation center, supposed to notify me, of jurisdiction change, but the INS Counsel Mr. Jerry A. Beatmann never did notify petitioner of change of jurisdiction. The same INS Counsel Mr. Jerry A. Beatmann, who sent petitioner a correspondence, stating that he has sent to Missouri Service Center, my finger print and photograph and change of address, at the request of the immigration judge, but he never sent it. (See Exhibit 4 - The correspondence from the INS Counsel, to petitioner claiming that he sent it.) Petitioner knew that INS Counsel did not sent it, when he received a "Bogus", finger print notification with out the service address on it. Stating, that petitioner should go to the application support center, at 249 pearl street, Hartford, Connecticut. For his finger prints. petitioner immediately knew that something is wrong, and called Missouri Service Center, to found out that the INS Counsel Mr. Jerry A. Beatmann, never sent it, as he claimed. petitioner then, sent the Missouri Service Center, his own copy with a cover note. (See Exhibit 5 - My cover note to Missouri Service Center, and Bogus finger print

(6)

that transferred my petition to Oakdale, deportation center at their request. Whereas, the INS Counsel Mr. Jerry A. Beatmann, never notify me, that Oakdale, has resumed Jurisdiction, over my case, Instead, he tried to misled the Court, that Missouri Service Center, has made their decision, whereas they did not. The immigration Judge, then asked the INS Counsel, did he recowed the transfer notice, he said "no", and the immigration Judge, reschedaled the hearing, on March 23, 2004, to enable me, bring the transfer notice, to the Court. Petitioner then remembered what the INS Counsel Mr. Jerry A. Beatmann said, on December 4, 2003, proceeding, that he finally located my file, in Louisiana, that him, and my deportation officer "Mr. Gueringer," are calling the service center, every week for speed process, so that they can get raide of me, that I am a bond to government expense. The immigration Judge, reschedule that hearing to January 9, 2004; During the proceedings, the immigration Judge asked, the INS Counsel, Jerry A. Beatmann, have they made a decision yet, Mr. Beatmann said No, again. Petitioner was mad, and brought to the attention of the court, the statement Mr. Beatmann, made on December 4, 2003, that they have located my file in Louisiana, that by next proceeding, their will

be a decision. Mr. Beatmann, denied the allegation, that he never made such statement. The immigration Judge, brought him, to his senses, that he made such statement, and that he documented it.

(6) On March 23, 2004; During the removal proceeding petitioner Okonkwo, brought with him to the Court, the transfer notice, from Chicago Service center. (See Exhibit 7 - The transfer Notice.) Petitioner, then argued, that the Notice of Decision, is fraudulent, that there is no way, a Service Center, will make a decision on February 17, 2004, and said, "they do not have a Jurisdiction over their Decision", and transferred it, to another Jurisdiction. Reading from the statement on the transfer notice, that decision is fraudulent and Bogus, and was not made by the missouri Service Center. Petitioner will now call on, Honorable Senior Judge Alvin W. Thompson, Honorable Charles A. Wiegand III, and Assistant United States, Attorney, Mr. William M. Brown, Jr. to read the statement in the transfer Notice, and justify their own views, that the Service Center, did not made Decision; Reading from the statement on the transfer Notice. The decision is fraudulent,

⑨

- Assuming arguendo, that the decision was made by the missouri Service Center, as the INS counsel mr. Beatmann, claimed. The notice of Decision said, "your application pursuant to section 1104 of the life Act, is hereby denied. That the evidence I, submitted does not establish that I filed a timely written claim for class memberships, in one of the legalization class action lawsuit, on or before october 1, 2000."

⑦ Attached herewith as Exhibit "8" — are true and accurate copies of "opposition To motion To Reconsider petitioner's Bond," from the Service in Oakdale, louisiana, dated August 11, 2000, at page 3, paragraph I; The Service said, it all, on behalf of petitioner, Okonkwo, filed a legalization application on or about June 20, 1990, with the service and was granted employment authorization as a class member in Catholic Social Service (CSS) V. Reno, 113 S.ct 24 85 (1993)

⑧ Attached herewith as Exhibit "9" — are true and accurate copies of government "Supplemental Response To Order To Show Cause," from middle District Court of pennsylvania, dated January 17, 2002, · The government again, said it all, on behalf of petitioner Okonkwo,

at page 2, paragraph 2, that, "In 1990, petitioner Okonkwo, filed an application to adjust his status to a lawful permanent Resident."

(1) The question then presented for the Court's Consideration become's, "whether if, government, did not have proves of evidence, on petitioner's Administrative Record, How did they Knew that petitioner Okonkwo, Did filed for legalization under C.SS v. Reno, on June 20, 1990. And also it was uncontested and undisputed, that Petitioner Okonkwo has identified himself as Musa Mohammed; Musa Mohammed, is my religious name (see the Joint statement of Uncontested facts, from factwo, 2 to 5.)

(2) The second question for this honorable Court's Consideration becomes "Whether in the light of the petitioner Religious Believes, Since federal laws prohibits Discriminations on the Ground of Race's, Color's, Age's, Employments and Religion's, whether Petitioner Okonkwo, Has the right to Change his Name Based on his Religious Believes. Suggested Answer: Affirmative.

(3) The third question for this honorable Court's Consideration becomes "Whether a straight forward reading of the statutory provision at issue, with

the "Exceptional Clause," provision of the regulatory mandate, in Conjuction with uncontested evidence of the administrative record". The issue remains "whether petitioner was properly classified as an "Arriving Alien" or whether the application section 212 (a)(7)(A)(i)(I) of the act as applied to petitioner is Constitutional". **Suggested Answer: Negative.** (see Exhibit "8" at page 2, and Exhibit 10 at page 3, the immigration judge concession.)

④ The fourth question for this honorable Court's consideration becomes, "whether it is constitutional to continue the unlawful Detention of petitioner as an "Arriving Alien", when in fact petitioner is been detained under Section 236(c), which retroactively does not apply to him. **Suggestive Answer: Negative** (see Exhibit "10" — Notice of Custody Determination.)

⑤ The fifth question for this honorable Court consideration becomes, "whether it is possible for petitioner Okonkwo, to arrived in the United States, at New York, New York, on November 22, 1995, under the false identity of Musa Mohammed, and were paroled, until November 22, 1996", "When in fact, the record indicates that petitioners conviction that formulated the basis for his initial detention and deportation occured on March 14, 1995, eight months prior to his parole date". **Suggested Answer: Negative.** (see Exhibit "12" — The Service in Oakdale, misled, to Director: Christine Davis.)

⑥ On exhibit "8", at page 3, The government in Oakdale, Louisiana, said, that petitioner was granted voluntary departure, until January 15, 1988, but failed to depart.

⑦ On exhibit "9", at page 2, The government in Pennsylvania, said, he left united states in 1988 and returned in 1989.

8. The government in Connecticut, said, petitioner depart the united states, subsequent to the expiration of his voluntary departure date. DDP is ready to accept the documentation alleging departure on 12/24/88, and execute the W/D as a self-deport. (See exhibit "13" - Correspondence from service in Connecticut.).

⑨ On exhibit "10", at page 3, The immigration Judge, concedes, that petitioner sought and obtained advance parole, in 1995, from the Service prior to embarking on his journey to Nigeria.

⑩ On exhibit "8", at page 3, The Service in Oakdale, said, there is no evidence in the alien registration file that the petitioner had applied for or was granted advance parole before his departure from the united states. The same service in Oakdale, that have in petitioner's administrative record, that petitioner filed for a legalization application on June 20, 1990, with the service, and was granted employment authorization card, as a class members in Catholic social service (CSS) V. Reno, 113 S.ct. 2485 (1993), Is now trying to mislead,

this honorable Court, that petitioner did not, filed a timely written claim for class membership in the Catholic Social Service, (CSS) V. Reno, 113 S.ct. 2485, on or before October 1, 2000.

petitioner will now ask this honorable Court to verify at 450 Main Street, Hartford, Connecticut, where this honorable Court, is located at 3rd floor or 4th floor, in the immigration office. A front Desk officer by the name of "Bruce", a bald head man, he will be petitioner's witness, that in 1990, when petitioner found a discrepancy on his employment authorization card, on his age, instead of June 25, 1960, they erroneously entered August 6, 1960, and petitioner brought the issue to his attention, with a sworn affidavit as to my actual age and place of birth, he promised that they will make the necessary change but never did.

petitioner will also used this opportunity, to clarify the false allegation on the **notice of Decision**, dated February 17, 2004, at page 2, paragraph 3. The government said, that the service record indicate that I have an alien number, A#93410158, that is not true, petitioner on march 23, 2004, at the immigration office, in Oakdale, asked the officer by name "R. Bertrand", to verify for me, in their central computer, to know whom the alien number

belong to. After verification, the officer, told me, the number does belong to nobody. The government put it in the decision, just to deform my character. Petitioner will also like to file a chronological comprehensive status report on this case, if need be.

Respectfully Submitted

_____ 4/12/04.
Ignatius Okonkwo

Cc: William M. Brown Jr. (AUSA)
    157 Church Street, New Haven, Ct. 06510.

Cc: Honorable Charles A. Wiegand III.
    Immigration Court, 1900 E. Whatley Road,
    Oakdale, LA. 71463.