UNITED    STATES    DISTRICT COURT
FOR   THE
DISTRICT   OF   CONNECTICUT

FILED

HARTFORD,  CONNECTICUT

2004 APR 22 A 11: 25

U.S. DISTRICT COURT

IGNATIUS UMEADI OKONKWO,

PETITIONER,

— V —

JOHN ASHCROFT, ET. AL.,

RESPONDENT

CIV. NO 3:02CV1733
(A.W.T)

## MOST CURRENT STATUS REPORT.

(1)    The immigration Judge abused his discretion, when he ordered the petitioner removal on absential on april 14, 2004, denying petitioner right to be present at the hearing as a prose litigant. petitioner procedural due process rights was violated, under the due process clause of the fifth and Fourteenth Amendment, to the united states, Constitution. When in fact petitioner, is Currently housed, at the federal Detention Center, by the agent of the Respondent, at Oakdale, louisiana, two minutes walk to the Court room. (see Exhibit I— The Court schedule dated april 30, 2004, and Respondent in Removal proceeding dated april 14, 2004.)

(2)    The same happened on August 25, 2000, petitioner was deported on absential, denying him access to air his own view at the Court. When in fact, he was scheduled for hearing on september 12, 2000.

the Conviction relied upon has been **vacated**, two years before <u>Rienteria - Gonzalez v. INS</u>, 322 F.3d 804, 812, (5th cir. 2002), not for immigration purpose, but under legal and Constitutional ground, and the service **Conceded** to it (see Exhibit "3" - at page 2, The government Concession, and **see** Fact No. "24" of the joint statement of un Contested Fact, previously sub-mitted to this court as exhibit) The vacatur should be respected by the service. **see** matter of <u>Rodriguez - Ruiz</u>, int. Dec. 3436 (B.I.A 2000) (we will ... accord full faith and Credit to this ~~state~~ court Judgment. [vacating a Conviction under New york state law], **see** also Sandoval VS INS, 240 F.3d 577 (7th cir. 2001).

The petitioner Contends that he is not an arriving alien as he was in possession of a valid entry permit as acknowledged by the immigration judge (**see** at Both exhibit 1 and 2 at Page 3, paragraph 2, of the petitioner removal proceedings).

**Wherefore**, petitioner prays that this honorable Court, will now issue Summary Judgement, and release petitioner Okonkwo, from this unlawfully detention, because of the prejudice surrounding this case. petitioner has been in detention for five (5) years without Conviction or any Crime petitioner will also, like to file a Chronological

E X H I B I T   "1"

NOTICE OF HEARING IN REMOVAL PROCEEDINGS
IMMIGRATION COURT
1900 E. WHATLEY ROAD
OAKDALE, LA   71463

RE:  OKONKWO, IGNATIUS UMEABI
FILE:  A26-792-202

DATE:  Mar 23, 2004

TO:       OKONKWO, IGNATIUS UMEABI
          FDC, P. O. BOX 5010
          OAKDALE, LA  71463
     Please take notice that the above captioned case has been scheduled for a
INDIVIDUAL hearing before the Immigration Court on  at    date

          1900 E. WHATLEY ROAD   *April 30, 2004 @ 2PM*
          OAKDALE, LA   71463
     You may be represented in these proceedings, at no expense to the
Government, by an attorney or other individual who is authorized and qualified
to represent persons before an Immigration Court. Your hearing date has not
been scheduled earlier than 10 days from the date of service of the Notice to
Appear in order to permit you the opportunity to obtain an attorney or
representative. If you wish to be represented, your attorney or representative
must appear with you at the hearing prepared to proceed. You can request an
earlier hearing in writing.
     Failure to appear at your hearing except for exceptional circumstances
may result in one or more of the following actions: (1) You may be taken into
custody by the Immigration and Naturalization Service and held for further
action, OR (2) Your hearing may be held in your absence under section 240(b)(5)
of the Immigration and Nationality Act. An order of removal will be entered
against you if the Immigration and Naturalization Service established by
clear, unequivocal and convincing evidence that a) you or your attorney has
been provided this notice and b) you are removable.
     IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT
CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION
COURT OAKDALE, LA  THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR
TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS.
EVERYTIME YOU CHANGE YOUR ADDRESS AND/OR TELEPHONE NUMBER, YOU MUST INFORM THE
COURT OF YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE
ON THE ATTACHED FORM EOIR-33.  ADDITIONAL FORMS EOIR-33 CAN BE OBTAINED FROM
THE COURT WHERE YOU ARE SCHEDULED TO APPEAR.  IN THE EVENT YOU ARE UNABLE TO
OBTAIN A FORM EOIR-33, YOU MAY PROVIDE THE COURT IN WRITING WITH YOUR NEW
ADDRESS AND/OR TELEPHONE NUMBER BUT YOU MUST CLEARLY MARK THE ENVELOPE "CHANGE
OF ADDRESS." CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE
SENT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED
SUFFICIENT NOTICE TO YOU AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.
     A list of free legal service providers has been given to you. For
information regarding the status of your case, call toll free 1-800-898-7180
or 703-305-1662.  *YOU MUST BRING PHOTO IDENTIFICATION TO ENTER THE BUILDING.*
                    CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL (M)     PERSONAL SERVICE (P)
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN's ATT/REP  [ ] INS
DATE:  3/23/04        BY: COURT STAFF    O.B.                        V3
     Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

KP8

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
OAKDALE, LOUISIANA

**FILE:** A26 792 202

**IN THE MATTER OF:**

Ignatius Umeadi OKONKWO a/k/a Nwankeona Chukwuduben a/k/a Musa MOHAMMED

**RESPONDENT IN REMOVAL PROCEEDINGS**

| | |
|---|---|
| **CHARGES:** | Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act; an alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense). |
| | Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, an immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document. |
| **APPLICATIONS:** | Termination. |
| | Cancellation of removal under section 240A(a) of the Immigration and Nationality Act. |
| | Cancellation of removal under section 240A(b) of the Immigration and Nationality Act. |
| | A waiver under section 212(h) of the Immigration and Nationality Act. |
| | Voluntary departure. |

1

**IN BEHALF OF THE RESPONDENT:**

Ignatius Umeadi Okonkwo
BOP# 16057-265
FDC, 5060 E. Whatley Rd.
Oakdale, LA 71463

**IN BEHALF OF THE GOVERNMENT:**

Jerry A. Beatmann, Monique Harris, and
Carl E. Perry
Asst. District Counsels
Bureau of Immigration and Customs
Enforcement
Department of Homeland Security
1010 East Whatley Rd.
Oakdale, LA 71463

## <u>DECISION OF THE IMMIGRATION JUDGE</u>

The respondent is a male native and citizen of Nigeria who arrived in the United States on November 22, 1995 and was paroled into this country. His parole expired on November 22, 1996. It is alleged that he is inadmissible because he is an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document. It is also alleged that he is inadmissible because on March 14, 1995 he was convicted in the state of Connecticut of the offense of larceny in the sixth degree.

In pleading to the Notice to Appear, counsel for the respondent admitted the first, second, and fifth allegations of fact contained therein. Allegations three and four were denied and the hearing was continued in order to receive evidence from the Government regarding the allegations which were denied.

When the hearing resumed on August 22, 2000, counsel for the Government offered a copy of a printout from the Government's Nonimmigrant Information System which was received without objection as Exhibit 2. That document establishes that on November 22, 1995, the respondent was paroled into the United States until November 22, 1996.

Regarding the fourth allegation, that the respondent is an immigrant not in possession of a

2

valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document, the respondent testified that he had entered the United States for the first time in 1981. He said he entered without inspection from Canada. He said after six months he returned to Canada and then to Nigeria. He said he came back to the United States in 1992 as a nonimmigrant student. He said he did not leave the United States again until the Spring of 1995 when he returned to Nigeria. He said he came back to the United States on November 22, 1995 as alleged by the Government. Later in the hearing, he testified that he also left the United States for six months in 1988 and returned to Nigeria.

The respondent testified that he married a native born citizen of the United States in 1984 and applied to the Immigration and Naturalization Service for adjustment of status based on his marriage to her. He said she died in 1988 while he was in Nigeria. He testified that he then applied to the Immigration and Naturalization Service in 1989 for adjustment of status under the legalization provisions of section 245A of the Act. He said he was given a card to authorize his employment and he has been renewing it every year since. A copy of the card issued in 1990 was received as Exhibit 3. The respondent testified that when he needed to travel to Nigeria in 1995, he contacted the Immigration and Naturalization Service and was issued a document. Although he could not recall what it was, I concluded, and counsel for the respondent agreed, that the document was an advance parole. The respondent testified that he lost that document while he was in Nigeria and was informed by the Bulgarian airline on which he wanted to return to the United States that he would have to contact the American Embassy. He said he did so and was given two papers, one for the airline and one for the inspecting officer. A copy of one of those was received as Exhibit 4.

3

Counsel for the respondent argued that the offense for which the respondent was convicted is not a crime involving moral turpitude. Petty larceny has long been held to be a crime involving moral turpitude; Matter of Esfandiary, 16 I&N Dec. 659 (BIA 1979); Matter of Garcia 11 I&N Dec. 521 (BIA 1966).

Counsel for the respondent also argued that since the respondent's conviction took place before he was issued an advance parole, the Government was constructively aware of it and should now be estopped from not admitting him. Equitable estoppel is a judicially devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or defense, regardless of its substantive validity; Matter of Hernandez-Puente, 20 I&N Dec. 335 (BIA 1991), citing M.D. Phelps v. Federal Emergency Management Agency, 785 F.2d 13 (1st Cir. 1986). The Supreme Court has recognized the possibility that the doctrine of equitable estoppel might be applied against the Government in a case where it is established that its agents engaged in "affirmative misconduct"; INS v. Hibi, 414 U.S. 5 (1973); Montana v. Kennedy, 366 U.S. 308 (1961). However, the Supreme Court has not yet decided whether even "affirmative misconduct" is sufficient to estop the Government from enforcing the immigration laws; INS v. Miranda, 459 U.S. 14 (1982). Some federal courts have found "affirmative misconduct" and applied estoppel against the Government; Corniel-Rodriguez v. INS, 532 F.2d 301 (2d Cir. 1976); Fano v. O'Neill, 806 F.2d 1262 (5th Cir. 1987).

Estoppel is an equitable form of action and only equitable rights are recognized. By contrast, the Board of Immigration Appeals can only exercise such discretion and authority conferred upon the Attorney General by law. The Board's jurisdiction is defined by the regulations and it has no jurisdiction unless it is affirmatively granted by the regulations. Therefore, the Board of

4

Immigration Appeals and Immigration Judges are without authority to apply the doctrine of equitable estoppel against the Government so as to preclude it from undertaking a lawful course of action that it is empowered to pursue by statute and regulation; Matter of Hernandez-Puente, supra.

Counsel for the respondent also argued that the documents received as Exhibits 3 and 4 should be considered to constitute valid entry documents. Exhibit 3 merely allows an employer to hire the respondent without fear of civil penalty. Exhibit 4 allowed a transportation company to bring the respondent to the United States without fear of being fined. Neither document is a valid entry document and the Government was correct in paroling the respondent rather than admitting him; see Matter of G-A-C-, Interim Decision 3354 (BIA 1998) and Matter of Torres, 19 I&N Dec. 371 (BIA 1986).

The respondent was found to be removable as charged. As relief from removal, he applied for cancellation of removal under sections 240A(a) and (b) of the Act, a waiver under section 212(h) of the Act, and voluntary departure. Regarding the application for a 212(h) waiver, the respondent testified that he has an illegitimate son who was born in 1997.

Counsel for the Government alleged that the respondent has an additional criminal record beyond the offense charged in the Notice to Appear. He said his file reflects a 1987 arrest in Minnesota for assault and terroristic threats. The respondent remembered the arrest. He testified that the charge was reduced to something he could not recall, that he entered a plea of guilty to the reduced charge, and that his sentence must have been suspended because he served no time in jail. Counsel for the Government said his file also reflected a 1986 arrest for criminal damage to property. However, the respondent could not recall being arrested on that charge.

5

Section 240A(a) of the Act provides that the Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien has been an alien lawfully admitted for permanent residence for not less than five years, has resided in the United States continuously for seven years after having been admitted in any status, and has not been convicted of any aggravated felony. In the instant case, the respondent is not an alien lawfully admitted for permanent residence. Therefore, he cannot qualify for cancellation of removal under section 240A(a) of the Act.

In order to qualify for cancellation of removal and adjustment of status under section 240A(b)(1) of the Act, an alien must establish that he or she has been physically present in the United States for a continuous period of not less than ten years immediately preceding the date of application, has been a person of good moral character during such period, and has not been convicted of an offense under section 212(a)(2), 237(a)(2), or 237(a)(3). The alien must also establish that his or her removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence. In the instant case, the respondent has been convicted of an offense under section 212(a)(2) and, since the conviction took place within the last ten years, cannot demonstrate the good moral character required. Therefore, he cannot qualify for cancellation of removal and adjustment of status under section 240A(b)(1) of the Act.

A waiver under section 212(h) of the Act is available only to immigrants. Since the respondent is not a lawful permanent resident of the United States and has no immigrant visa, he cannot qualify for that relief.

As to the application for voluntary departure, that relief is not available to an arriving

6

alien; section 240B(a)(4) of the Act.  Since the respondent is an arriving alien, he cannot qualify for voluntary departure.  } note

Since the respondent was removable and eligible for none of the forms of relief he sought, there was no purpose to be served by conducting further hearings in this matter. Accordingly, on August 25, 2000 the hearing scheduled for September 12, 2000 was canceled and I issued a written decision denying the applications for relief and ordering the respondent's removal to Nigeria.

The respondent appealed but in a decision dated October 12, 2000, the Board of Immigration Appeals found it was untimely.  The respondent then filed a series of motions to reopen and reconsider.  On November 8, 2001, the Board reopened proceedings and remanded the record to me to consider new evidence regarding the respondent's removability and eligibility for relief.

The respondent alleged that his larceny conviction had been vacated.  He also alleged that the immigration authorities had approved his application for legalization.  The Government disagreed arguing that the respondent has merely established that he attempted to file a legalization application between May 5, 1987 and May 4, 1988 and that the application was rejected by the Immigration and Naturalization Service or a Qualified Designated Entity.  The Government argued that the respondent's status has yet to be adjusted to that of a temporary resident.

When the remanded hearing commenced on January 11, 2002, the respondent was represented by new counsel.  A copy of the order vacating his larceny conviction was received without objection as Exhibit 5.  Copies of correspondence from the Immigration and

7

Naturalization Service regarding the legalization application were received without objection as Exhibits 6 and 7. I determined that the respondent's status had not yet been adjusted to that of a temporary resident. The hearing was continued to a series of status conferences to see what action would be taken by the immigration authorities on the application.

Counsel for the respondent later moved to withdraw. His request was granted on April 22, 2003. The respondent elected to proceed pro se.

At a status conference conducted on March 11, 2004, counsel for the Government stated that the respondent's application for legalization has been denied. As proof thereof, he offered a copy of a decision dated February 17, 2004. The respondent stated that he had received a Notice of Intent to Deny dated January 13, 2004, but had not received the decision offered by counsel for the Government. He requested an opportunity to study the document before expressing any objection to it. The request was granted and the hearing was continued to March 23, 2004.

When the hearing resumed on March 23, the respondent had several objections to the Notice of Decision, but they all involved the correctness or the propriety of the decision, not its admissibility. Concerning the propriety of the decision, he offered several documents, including a copy of the Notice of Intent to Deny dated January 13, 2004 which was received as Exhibit 8 and a copy of transfer notice either from the Department of Homeland Security's office in Chicago, Illinois or informing the respondent that his application was transferred to that office. It was received as Exhibit 11. I note that the date on that document is February 18, 2004, a day after the date on the Notice of Decision. The respondent even accused counsel for the Government of fabricating the Notice of Decision which was offered.

If the respondent had not admitted receiving the Notice of Intent to Deny dated January

13, 2004, there might be some validity to his arguments about the authenticity of the Notice of Decision. But since he admits receiving the Notice of Intent to Deny, it is logical that a Notice of Decision would follow it sometime after the 30 days which were allowed to submit additional evidence. As to the document received as Exhibit 11, it is obvious that the file was transferred long before that document was mailed because the Notice of Intent to Deny was issued by the Department of Homeland Security's office in Lee's Summit, Missouri on January 13, 2004 and the Notice of Decision was issued by the same office about 34 or 35 days later. It appears that the date on Exhibit 11 is due to a large backlog of correspondence at whatever office issued it. I received the Notice of Decision over the respondent's objections as Exhibit 10. It reflects that the respondent's application for legalization was denied because he failed to establish that he had filed a timely written claim to class membership in any of the three class action lawsuits listed in 8 C. F. R. 245a.10.

Having resolved the issue of the respondent's application for legalization, I must now return to his eligibility for relief from removal. He is not eligible for cancellation of removal under section 240A(a) of the Act, a waiver under section 212(h) of the Act, and voluntary departure for the reasons set forth above. As to his eligibility for cancellation of removal and adjustment of status under section 240A(b) of the Act, I had originally found him ineligible because his 1995 conviction precluded him from demonstrating the good moral character required for that relief. Since the Board of Immigration Appeals remanded this matter, it has decided Matter of Pickering, 23 I&N Dec. 621 (BIA 2003). In footnote 2 of that decision, the Board held that the majority opinion in Renteria-Gonzalez v. INS, 322 F.3d 804, 812 (5th Cir. 2002) states that a vacated conviction remains valid for purposes of the immigration laws

9

irrespective of the reasons why the conviction was vacated. Although the Board declined to apply that decision outside the jurisdiction of the Fifth Circuit, it appears to be binding within the Fifth Circuit's jurisdiction. Therefore, I must find that the respondent cannot establish the good moral character required for cancellation of removal and adjustment of status under section 240A(b) of the Act.

Since the respondent is not eligible for the relief sought, there is no point in receiving his applications for relief or in conducting further hearings in this matter. Accordingly, the hearing scheduled for April 30, 2004 is canceled and the following order is entered.

**ORDER:**    It is ordered that the respondent be removed from the United States to Nigeria on the charges contained in the Notice to Appear.

April 14, 2004

Date

Charles A. Wiegand, III
Immigration Judge

10

E X H I B I T   "2"

EXHIBIT 2

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
OAKDALE, LA

~HAEL G. MOORE
~MAPLE STREET
~RINGFIELD, MA  01103

~E: OKONKWO, IGNATIUS UMEADI
~NMATE NO) 16057-265

~TICE OF HEARING IN REMOVAL PROCEEDINGS

~TE OF NOTICE:  Aug 22, 2000
~LE: A26-792-202

~u are hereby notified that a hearing in this case is scheduled/rescheduled
~ore an Immigration Court on   at     at

September 12, 2000

10:30 Am Central

1900 E. WHATLEY ROAD
OAKDALE, LA  71463

~ may be represented in this proceeding at no expense to the Government by an
~orney or other individual who is authorized and qualified to represent
~sons before an Immigration Court.  If you wish to be represented, your
~orney or representative should appear with you at the scheduled hearing.

~pt as otherwise ordered by an Immigration Judge, any motions (including
~ions for continuances and motions to withdraw as counsel), applications, or
~er correspondence concerning this case should be filed with the Immigration
~urt at:     1900 E. WHATLEY ROAD
OAKDALE, LA  71463

~ least 10 days prior to the scheduled hearing.  Evidence of payment of
~ppropriate filing fees must be included.

~ANYONE EXPECTING TO ENTER THE FACILITY IN ORDER TO APPEAR AT THE IMMIGRATION
~HEARING IS SUBJECT TO CORRECTIONS DEPARTMENT POLICIES AND PROCEDURES REGARDING
ENTRY.  CONTACT THE SECURITY OFFICE AT THIS PRISON IN ADVANCE OF THE DAY OF THE
HEARING FOR FURTHER SPECIFIC INFORMATION ABOUT ENTRY GUIDLINES.

For information regarding the status of your case, call toll free
1-800-898-7180 OR 703-305-1662.

CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY: MAIL (M)    PERSONAL SERVICE (P)
TO: [V] ALIEN [ ] ALIEN c/o Custodial Officer  [ ] ALIEN'S ATT/REP  [ ] INS
DATE: X-22-00 _____ BY: COURT STAFF _____
    Attachments: [ ] EOIR-33  [ ] EOIR- 28  [ ] Legal Services List  [ ] Other
                                                                        3Y

KP8

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
OAKDALE, LOUISIANA

FILE: A26 792 202

IN THE MATTER OF:

Ignatius Umeadi OKONKWO a/k/a Nwankeona Chukwuduben a/k/a Musa MOHAMMED

RESPONDENT IN REMOVAL PROCEEDINGS

CHARGES:    Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act; an alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense).

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, an immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document.

APPLICATIONS:    Termination.

Cancellation of removal under section 240A(a) of the Immigration and Nationality Act.

Cancellation of removal under section 240A(b) of the Immigration and Nationality Act.

A waiver under section 212(h) of the Immigration and Nationality Act.

Voluntary departure.

1

IN BEHALF OF THE RESPONDENT:

Michael G. Moore
20 Maple Street – Suite 302
Springfield, MA   01103

IN BEHALF OF THE SERVICE:

Jerry A. Beatmann and Monique Harris
Asst. District Counsels
Immigration and Naturalization Service
1010 East Whatley Rd.
Oakdale, LA 71463

## DECISION OF THE IMMIGRATION JUDGE

The respondent is a male native and citizen of Nigeria who arrived in the United States on November 22, 1995 and was paroled into this country. His parole expired on November 22, 1996. It is alleged that he is inadmissible because he is an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document. It is also alleged that he is inadmissible because on March 14, 1995 he was convicted in the state of Connecticut of the offense of larceny in the sixth degree.

In pleading to the Notice to Appear, counsel for the respondent admitted the first, second, and fifth allegations of fact contained therein. Allegations three and four were denied and the hearing was continued in order to receive evidence from the Service regarding the allegations which were denied.

When the hearing resumed on August 22, 2000, counsel for the Service offered a copy of a printout from the Service's Nonimmigrant Information System which was received without objection as Exhibit 2. That document establishes that on November 22, 1995, the respondent was paroled into the United States until November 22, 1996.

Regarding the fourth allegation, that the respondent is an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid

2

entry document, the respondent testified that he had entered the United States for the first time in 1981. He said he entered without inspection from Canada. He said after six months he returned to Canada and then to Nigeria. He said he came back to the United States in 1992 as a nonimmigrant student. He said he did not leave the United States again until the Spring of 1995 when he returned to Nigeria. He said he came back to the United States on November 22, 1995 as alleged by the Service. Later in the hearing, he testified that he also left the United States for six months in 1988 and returned to Nigeria.

The respondent testified that he married a native born citizen of the United States in 1984 and applied to the Service for adjustment of status based on his marriage to her. He said she died in 1988 while he was in Nigeria. He testified that he then applied to the Service in 1989 for adjustment of status under the legalization provisions of section 245A of the Act. He said he was given a card to authorize his employment and he has been renewing it every year since. A copy of the card issued in 1990 was received as Exhibit 3. The respondent testified that when he needed to travel to Nigeria in 1995, he contacted the Service and was issued a document. Although he could not recall what it was, I concluded, and counsel for the respondent agreed, that the document was an advance parole. The respondent testified that he lost that document while he was in Nigeria and was informed by the Bulgarian airline on which he wanted to return to the United States that he would have to contact the American Embassy. He said he did so and was given two papers, one for the airline and one for the inspecting officer. A copy of one of those was received as Exhibit 4.

Counsel for the respondent argued that the offense for which the respondent was convicted is not a crime involving moral turpitude. Petty larceny has long been held to be a

3

crime involving moral turpitude; Matter of Esfandiary, 16 I&N Dec. 659 (BIA 1979); Matter of Garcia 11 I&N Dec. 521 (BIA 1966).

Counsel for the respondent also argued that since the respondent's conviction took place before he was issued an advance parole, the Service was constructively aware of it and should now be estopped from not admitting him. Equitable estoppel is a judicially devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or defense, regardless of its substantive validity; Matter of Hernandez-Puente, 20 I&N Dec. 335 (BIA 1991), citing M.D. Phelps v. Federal Emergency Management Agency, 785 F.2d 13 (1st Cir. 1986). The Supreme Court has recognized the possibility that the doctrine of equitable estoppel might be applied against the Government in a case where it is established that its agents engaged in "affirmative misconduct"; INS v. Hibi, 414 U.S. 5 (1973); Montana v. Kennedy, 366 U.S. 308 (1961). However, the Supreme Court has not yet decided whether even "affirmative misconduct" is sufficient to estop the Government from enforcing the immigration laws; INS v. Miranda, 459 U.S. 14 (1982). Some federal courts have found "affirmative misconduct" and applied estoppel against the Government; Corniel-Rodriguez v. INS, 532 F.2d 301 (2d Cir. 1976); Fano v. O'Neill, 806 F.2d 1262 (5th Cir. 1987).

Estoppel is an equitable form of action and only equitable rights are recognized. By contrast, the Board of Immigration Appeals can only exercise such discretion and authority conferred upon the Attorney General by law. The Board's jurisdiction is defined by the regulations and it has no jurisdiction unless it is affirmatively granted by the regulations. Therefore, the Board of Immigration Appeals and Immigration Judges are without authority to apply the doctrine of equitable estoppel against the Service so as to preclude it from undertaking a lawful course of

action that it is empowered to pursue by statute and regulation; Matter of Hernandez-Puente, supra.

Counsel for the respondent also argued that the documents received as Exhibits 3 and 4 should be considered to constitute valid entry documents. Exhibit 3 merely allows an employer to hire the respondent without fear of civil penalty. Exhibit 4 allowed a transportation company to bring the respondent to the United States without fear of being fined. Neither document is a valid entry document and the Service was correct in paroling the respondent rather than admitting him; see Matter of G-A-C-, Interim Decision 3354 (BIA 1998) and Matter of Torres, 19 I&N Dec. 371 (BIA 1986).

The respondent was found to be removable as charged. As relief from removal, he applied for cancellation of removal under sections 240A(a) and (b) of the Act, a waiver under section 212(h) of the Act, and voluntary departure. Regarding the application for a 212(h) waiver, the respondent testified that he has an illegitimate son who was born in 1997.

Counsel for the Service alleged that the respondent has an additional criminal record beyond the offense charged in the Notice to Appear. He said his file reflects a 1987 arrest in Minnesota for assault and terroristic threats. The respondent remembered the arrest. He testified that the charge was reduced to something he could not recall, that he entered a plea of guilty to the reduced charge, and that his sentence must have been suspended because he served no time in jail. Counsel for the Service said his file also reflected a 1986 arrest for criminal damage to property. However, the respondent could not recall being arrested on that charge.

Section 240A(a) of the Act provides that the Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien has been an

5

alien lawfully admitted for permanent residence for not less than five years, has resided in the United States continuously for seven years after having been admitted in any status, and has not been convicted of any aggravated felony. In the instant case, the respondent is not an alien lawfully admitted for permanent residence. Therefore, he cannot qualify for cancellation of removal under section 240A(a) of the Act.

In order to qualify for cancellation of removal and adjustment of status under section 240A(b)(1) of the Act, an alien must establish that he or she has been physically present in the United States for a continuous period of not less than ten years immediately preceding the date of application, has been a person of good moral character during such period, and has not been convicted of an offense under section 212(a)(2), 237(a)(2), or 237(a)(3). The alien must also establish that his or her removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence. In the instant case, the respondent has been convicted of an offense under section 212(a)(2) and, since the conviction took place within the last ten years, cannot demonstrate the good moral character required. Therefore, he cannot qualify for cancellation of removal and adjustment of status under section 240A(b)(1) of the Act.

A waiver under section 212(h) of the Act is available only to immigrants. Since the respondent is not a lawful permanent resident of the United States and has no immigrant visa, he cannot qualify for that relief.

As to the application for voluntary departure, that relief is not available to an arriving alien; section 240B(a)(4) of the Act. Since the respondent is an arriving alien, he cannot qualify for voluntary departure.

Since the respondent is removable and eligible for none of the forms of relief he seeks, there is no purpose to be served by conducting further hearings in this matter. Accordingly, the hearing scheduled for September 12, 2000 will be canceled and the following order will be entered.

ORDER:    It is ordered that the respondent's applications for cancellation of removal under sections 240A(a) and (b) of the Act, a waiver under section 212(h) of the Act, and voluntary departure be denied.

It is further ordered that the respondent be removed from the United States to Nigeria on the charges contained in the Notice to Appear.

_Aug. 25, 2000_
Date

_Charles A. Wiegand, III_
Charles A. Wiegand, III
Immigration Judge

7

E X H I B I T   "3"

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

IGNATIUS OKONKWO

        Petitioner      :

    vs.            :

IMMIGRATION AND NATURALIZATION  :
SERVICE,

        Respondent     :

:  No. 4:CV-00-2057

:  Petition Filed 11/27/00

:  (Judge Muir)

FILED
WILLIAMSPORT, PA

JAN 2 8 2002

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

ORDER

January 28, 2002

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before us is the petition for writ of habeas corpus filed Ignatius Okonkwo (hereinafter "Okonkwo"). Okonkwo claims that he is being unlawfully detained pursuant to a final order of deportation because that order is based on a conviction which was overturned after the order had been issued. On December 18, 2001, we issued an order requiring the Immigration and Naturalization Service to submit a supplemental response addressing the merits of Okonkwo's petition because the Immigration and Naturalization Service's initial response was based strictly on procedural issues which have since been resolved. We issued the December 18, 2001, order because it appeared that Okonkwo's petition has merit.

On January 17, 2002, the INS timely filed in Harrisburg its supplemental response to Okonkwo's petition. In that document, the Immigration and Naturalization Service concedes that the conviction upon which Okonkwo's detention and deportation are based has been vacated. (Document 25, p. 3) Nonetheless, the Immigration and Naturalization Service argues that Okonkwo's petition should be denied without prejudice or stayed because Okonkwo has filed administrative matters with the Immigration and Naturalization Service which remain pending. We do not see how the administrative matters referenced by the Immigration and Naturalization Service affect the issues in this matter, and the Immigration and Naturalization Service has not identified any substantive connection.

Okonkwo's petition was filed in this court in November of 2000. The uncontested evidence of record supports his claim that there is no lawful basis to detain him. We are of the view that the Immigration and Naturalization Service has had ample time to address Okonkwo's case and that its declination to rule on Okonkwo's pending matters is not a valid reason to either deny his petition or stay this case.

We will require the Immigration and naturalization to file an explanation of what, if any, legitimate grounds to detain

Okonkwo currently exist.  If no such reason exists, we will grant his petition.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

The government shall, within 20 days after the date of this order, file an explanation of what, if any, legitimate grounds to detain Okonkwo currently exist.

MUIR, U. S. District Judge

MM:ga

3