UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
HARTFORD, CONNECTICUT

FILED
2004 AUG 31  A 9:31
U.S. DISTRICT COURT

| | |
|---|---|
| IGNATIUS UMEADI OKONKWO,<br>Petitioner,<br><br>-vs-<br><br>JOHN ASHCROFT, ATTORNEY<br>GENERAL OF THE UNITED STATES,<br>Respondents, | Civ. No. 3:02CV1733 (AWT) |

### PETITIONER'S OPPOSITION TO RESPONDENT'S OBJECTION
### TO HIS MOTION FOR PRELIMINARY INJUNCTION

Petitioner, Ignatius Umeadi Okonkwo, pro-se, hereby submits this responsive pleadings in opposition to the Goveernment's objection to his Motion for Preliminary Injunction.

In support of his opposition, and request for immediate order directing his release from custody, Petitioner avers as follows:

#### PETITIONER'S MOTION AND LAST SUBMISSION

In his last submission to the court, Okonkwosubmitted that (1) He has exhausted his administrative remedies, at least with regards to the **'constitutionality of his detention claim'**, thus, this issue is now ripe for review, and the court should adjudicate this matter on its merit; or (2) Alternatively the court should grant a preliminary injunction directing his release pending final adjudication of this habeas Petition.

Lastly, Okonkwo's submission to the court rebutted the Government request for the transfer of this case to Alabama for lack of jurisdiction in light of the Supreme Court's decision in <u>Padilla v. Rumsfeld</u>, 124 S.ct. 2711 (2004), noting correctly that the Supreme Court's decision in <u>Padilla</u> did not affect this court's jurisdiction over this case, as the court left open the question of whether or not Attorney general is proper custodian of alien's habeas petitioner.

### THE 'RESPONDENT'S OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION'

In response to the above arguments from Okonkwo, the Government brings forth three frivolous and irrelevant arguments:

1. That the legality of the decision to continue Okonkwo's detention ... is a matter within the **discretion** of of the **Attorney General** which this court lacks jurisdiction to review. The government further noted that this is a 'purely factual or discretionary determination made by the IJ/BIA".

However, the Government ignores the fact that Okonkwo is not seeeking the review of any IJ or BIA discretionary decision to detain him rather, he merely challenges the **'constitutionality of his five years continued detention without 'any <u>individualized determination of his eligibility for release</u>'**. Significantly, the Government did not identify, what, if any discretionary decision Okonkwo sought this court to review. This is because there was never any 'discretionary or factual decision'

For these and other reasons argued below, the Government's objection should be overrulled and this court should either

address the propriety of detaining Okonkwo without any individualized hearing, especially in light of the vacatur of his criminal conviction; or alternatively, the court should order a preliminary injunction directing Okonkwo's release pending the final outcome of this proceedings, for the reasons stated in his motion for preliminary injunction.

2. Having failed to rebut the Petitioner's constitutional challenge to his detention, the respondent returns to its previous arguments : that the - 'Warden is okonkwo's custodian", even though, it necessarily concedes that the Attorney General is his custodian, by stating in its first argument that the legality of okonkwo's detention 'is a matter within the **discretion of Attorney General**'. This contraditory positions on the part of the Government fails for the reasons stated in Okonkwo's last submission, and the reasons stated by the **Padilla** court at footnote 8. nor can the government find succor in the **Billiteri v. U.S. Board of Parole,** 541 F.2d. 38, 948 (2nd. Cir. 1976). The Second Circuit and majority of the courts in this circuit had distinguished immigration detainees situation from that of the parolees discussed in **Billiteri**, just as the **Padilla** court distinguished its holdiing. This is fully argued below.

3. Lastly, the Government argued that 'Petitioner can show no substantial possibility of success on the merits because he has not exhausted administrative remedies' and because there is no showing of abuse of discretion or legal error.

The Government's argument in this regards is unavailing. First, Okonkwo is not asking the court to review the substantive merit of the removal proceedings, **neither did he apply for any form of discretionary reliefs**, for which he is seeking this court's review. Thus, this line of argument on the part of the government must be rejected.

To the extent that the Government may want to posit that Okonkwo's vacated conviction is valid for the purpose of his **continued detention**, or that his erroneous classification as an arriving alien for the purpose of his continued detention, are factual or discretionary determinations, the Government is simply incorrect. Whether a vacated conviction remains valid for okonkwo's continued detention, and whether or not he is retroactively classified as an arriving alien is a legal and constitutional question cognizable on this habeas petition, and a proper subject of a preliminary injunction, as argued and cited below.

## ARGUMENT AND ANALYSIS

I. BECAUSE OKONKWO HAS NOW EXHAUSTED HIS ADMINISTRATIVE REMEDIES WITH REGARDS TO HIS DETENTION CLAIMS, AND BECAUSE HE ONLY SOUGHT THE REVIEW OF THE 'CONSTITUTIONALITY' OF HIS CONTINUED DETENTION, THIS COURT SHOULD ADJUDICATE THIS CLAIM ON THE MERITS OR GRANT A PRELIMINARY INJUNCTION PENDING REVIEW.

Contrary to the Government assertion, Okonkwo is not seeking the review of any 'factual or discretionary determination' of the Attorney General, as it relates to his continued detention,

rather he challenges the constitutionality of his five years continued detention either under section 235(b), or section 236(c). He asserts that to the extent that the Government claim he is being detained under section 235(b)[the detention regime under 235(b)], his detention under that regime is unconstitutional, since the ICE has not reviewed his detention status for the five years since he has been in custody. It is well settled in this circuit that an agency failure to comply with its own regulation warrant reversal. See e.g. **Montilla v. INS**, 926 F.2d. 162 (2nd. Cir. 1991) Thus, because the agency has not reviewed Okonkwo's custody status throughout his five years of detention, the court must grant his motion for preliminary injunction and order his release from custody.

Moreover, Okonkwo claims he is not an arriving alien, and should not be subjected to detention under section 235(b), based on the impermissble retroactivity of the definition of 'Arriving Alien' in the statute [a substantial constitutional claim], and his conviction has been vacated, thus under section 235(b) Okonkwo's detention status is unconstituional and therefore, this court should order his release from custody or grant a preliminary injunction under Rule 55 (a).

To the extent that the government claim Okonkwo is under section 236(c), his detention will still be unreasonable and unconstitutional under Justice Kennedy's concurrence in **Demore v. Kim**, 538 U.S. 510, 699 (2003)[explicating his

understanding that the majority opinion may allow an individualized hearing when, for example there has been unreasonable delay the INS], accord **Zgombic v. Farquharson**, 2003 WL 212443248 at *1 (2nd. Cir. 2003).

Here, Okonkwo has been detained for more than five years without any individualized hearing, due to delays attributable to the INS's nefarious litigation strategy in erroneously classifying him as an Arriving alien, thus under the more stringent **Demore** supra rationale, Okonkwo's continued detention will still not pass constittuional muster.

In sum, Okonkwo submits that because he has raised a purely constitutional and legal questions regarding his detention, and because he has fully exhausted administrative remedies with regards to his detention claims, this court should either rule on the merits of his detention claim or grant him a preliminary injunction ordering his relese from custody. In making this determination this court should take cognizance of the fact that his conviction has been vacated--and he did not have any other criminal conviction from which the ICE can infer that he is a danger to the society or risk of flight.

Finally, because Okonwo only challenge the constitionality of his continued detention, in light of the vacatur of his criminal conviction and/or erroneous classification of his status as an arriving alien [a purely legal question], he needs not and will not address the government's discussion on the scope of Habeas jurisdiction and whether or not it apply to review of purely factual and discretionary determination

of the Attorney general as it is not issue before the court.

Accordingly, the court should reject the Government's attempt to recharacterize Okonkwo's constitutional question and rule on the merits of his contention that his continued detention is unreasonable and/or unconstitutional as argued to the court in his habeas corpus petition, or alternatively grant a preliminary injunction pending final adjudication of the claim. See e.g. **Grodzki v. Reno**, 950 F. Supp. 339 (N.D. Ga. 1996)[ordering release of an alien from custody using the a preliminary injunction standard]; **Tam v. INS**, 14 F. Supp. 2d. 1184 (ED Ca. 1998)[releasing an alien from custody pending resolution of Habeas Corpus petition applying a preliminary injunction standard]; **Seretse-Kharma v. Ashcroft**, 215 F.Supp.2d. 37 (D.D.C. 2002)[same].

## II. NEITHER THE SUPREME COURT'S DECISION IN PADILLA, NOR THE SECOND CIRCUIT'S DECISION IN BILLITERI SUPPORTS THE GOVERNMENT'S QUEST FOR THE DISMISSAL OR TRANSFER OF THIS PETITION FOR LACK OF PERSONAL JURISDICTION.

Having failed to succesfully rebut Petiioner's claim that his continued detention is unlawful and unconstitutional, the Government in another desperate efforts to evade the petitioners substantial constitutional claim, once again questions the jurisdiction of this court over this matter.

However, the government latest attempt to evade this petition fails. It first argued that this court lacked jurisdiction over the discretionary determination of the **"Attorney General"**, and then contraditorily held that **"Warden of Etowah County Jail"** is Okonkwo's custodian. The government argument is meritless.

In support of its position that this case be dismissed or transferred, the Government relies principally on **Padilla v. Rumsfeld**, 124 S.Ct. 2711 (2004), and **Billiteri v. U.S. Board of Parole**, 541 F.2d. 938, 948 (2nd. Cir. 1976). None of these cases are of any assitance to the Government.

With regards to the Government's reliance on **Padilla**, Okonkwo already detailed to the court in his last submission that the Supreme court's mandate in **Padilla** did not apply to immigration detainees, especially a detainee like him who has been so frequently transferred. See Okonkwo's last submission at pg. 11 to 14. See also **Padilla** at footnote 8. Thus, the government's repeated attempt to rescucitate its reliance on **Padilla** is another desperate bid to perpetuate Okonkwo's detention.

As with the Government's reliance on **Billiteri v. U.S. Board of parole**, the government's argument is also misplaced. In **Billiteri**, the Second Circuit held that the Warden, not the parole Board, was the custodian of the petitioner in habeas proceedings. **Billiteri**, 541 F.2d. at 948. Although the parole board was the decisionmaking body which had the authority to release petitioner, the warden had control over the confined Petitioner. **id** "**Billiteri** is inapplicable in this case, because the warden is not an agent of the INS or the Attorney General, unlike the warden in **Billiteri** who is the agent of the parole Board. See e.g. **Mojica v. Reno**, 970 F.Supp. 130, 167 (EDNY 1997).

In fact, several courts in this circuit has distinguished the rationale of **Billiteri** from that of alien's habeas Petitioner and has assumed jurisdiction over Habeas petition where Attorney

General is named as a custodian. See e.g. **Martinez-Rymer v. Ashcroft**, 2001 U.S. Dist LEXIS 20653 (SDNY 2001); **Arias-Agamonte v. C.I.R**, 200 U.S. Dist LEXIS 15716 (SDNY, Oct. 30 2000) **Mojica v. Reno**, supra..

Accordingly, this court should find that both the holding of **Padilla** and **Billiteri** is readily distinguishable from the fact of Okonkwo's case and find that this court retains personal jurisdiction over this case.

Moreover, the fact that Petitioner is being transferred to jurisdiction where he will not have a meaningful review of his habeas Corpus petition clearly demonstrate an attempt to evade his colorable habeas claim. For instance, petitioner was previously detained within the Western District of Louisiana where Petiitoners are being removed before the final adjudication of their cases. See **Oakdale Justice: Routing Vacaturs of Stays in the Western District of Louisiana**, by Nancy Morawetz, published in **Benders Immigration Bulletin**, Vol 9, No. 1 (January 1st 2004) [See **Attachment 1**). He is now detained within the eleventh circuit where there are heightened standards for the issuance of stays of removal. See **Bin Weng v. United States Atty. Gen**, 287 F.3d. 1335 (11th Cir. 2002).

In sum, the court should reject the government latest attempt to evade Okonkwo's habeas petition. The Court is respectfully urged to rule on this personal jurisdiction or preclude the Government from repeatedly bringing this argument--as it is a waste of this court's time and scarce judicial resources.

III. BECAUSE OKONKWO IS ONLY ASKING, AT THIS TIME FOR THE REVIEW OF HIS DETENTION CLAIM, THE GOVERNMENT'S POSITION THAT HE CANNOT SHOW 'SBSTANTIAL POSSIBILITY OF SUCCESS' BECAUSE HE HAS NOT EXHAUSTED ADMINISTRATIVE REMEDIES SHOULD BE REJECTED

Finally, the government argued that Petitioner 'can not show substantial possibility of success on the merits because he has not yet exhausted his administrative, remedies; and that 'there is no showing of abuse of discretion or legal errors'

Petitioner asserts that because he is only seeking the review of the constituionality of his detention claim, at this time, a claim which he has already been exhausted, he needs not address the respondent's last claim.

However, to the extent that the Government's argument on the possibility of success on the merits implicates his request for preliminary injunction, Okonkwo asserts that there is a substantial possibility of success on the merits of both his detention claims and his removability claim-- since his conviction for which the predicate removal is based has been vacated, and the Government has conceded both in the administrative proceeding and at another judicial forum that he is a lawful permanent resident.

Regarding his vacated conviction, the Oakdale's administrative law judge relying on a fifth circuit's case laws posited that Okonkwo's vacated conviction remains valid for the purpose of immigration laws. However, this court is not bound by neither the Fifth Circuit case laws, nor the BIA's interpretation of such laws to a resident of the State of Connecticut like Okonkwo. Thus, applying the Second Circuit's case laws, which this court is bound to follow, there is no longer any doubt

that Okonkwo is now being unlawfully detained. Thus, he is entitled to either release from custody on his own recognizance, or the grant of preliminary injunction . See **Campbell v. United States**, 167 F.3d. 94, 98-99 (2nd. Cir. 1999)[indicating that a conviction vacated on legal grounds is invalid for the purpose of immigration act].

To the extent that the Government cites **Arango-Aradondo v. INS** 13 F.3d. 610, 613 (2nd. Cir. 2001), and **Zhao v. United States Dept. of Justice**, 265 F.3d. 83, 93 (2nd. Cir. 2001) for a proposition that the IJ did not abuse his 'discretion', Petitioner asserts that this petition did not challenge any discretionary decision of the IJ or the BIA, thus, the government citation to these cases are irrelevant to the issue before this court. rather, petitoner presents a purely legal and constitutional claim that his vacated conviction is not valid for the purpose of his continued detention, and that his five years continued detention without any individualized hearing is unconstitutional.

Accordingly, the court should disregard the government's argument on this point and disregard its citation to these irrelevant cases.

Finally, the Government noted that "petitioner's applications for for Cancellation of removal, adjustment of status and waiver of inadmissibility or voluntary departure were denied by the IJ."

It is respectfully submitted that Okonkwo did **not apply for any of these discretionary reliefs before the Immigration Judge,** and is **not appealing any of the IJ's discussion of eligibility for these reliefs either to the BIA or to this court.** He only move this

Honorable Court for the "Constitutionality" and "Legality" of using convictions that has been vacated on legal grounds for his continued detention and/or deportation and the constitutionality of impermissibly retroactive application of the new definition of arriving aliens to conducts already past. [A substantial constitutional question]

Accordingly, the court should reject the government's attempt to mislead this court by erroneously noting that he seeking the review of denial of applications for discretionary reliefs.

## CONCLUSIONS

based on the foregoing arguments, citations and authorities, the court should reject the government argument in its entirety and grant the following reliefs:

1. Assume personal jurisdiction over this matter;

2. Grant a preliminary injunction directed at the respondent precluding Petitioner's continued detention pending the final outcome of this petition; or

3. Adjudicate the merits of his detention claim pending the full adjudication on the merits of removability issues; and

4. Grant other reliefs the court may deem just and proper.

Dated; August 27 2004                    Respectfully Submitted,

                                         Ignatius Umeadi Okonkwo
                                         #A26-792-202
                                         Etowah County Detention Ctr.
                                         827 Forrest Avenue
                                         Gadsden, AL. 35901

## CERTIFICATE OF SERVICE

I certify that I have served a true and correct copy of the foregoing on the opposing counsel, via U.S. Postal Service postage prepaid, properly affixed and addressed to:

William M. Brown, Jr.
Assistant U.S. Attorney
For the District of connecticut
157 Church Street
New Haven, Connecticut 06510.

on this 27 day of August 2004.

_____
Ignatius Umeadi Okonkwo
Petitioner, Pro-Se.

```
                    ATTACHMENT  1

         'OAKDALE JUSTICE, ROUTINE VACATUR OF STAYS
            IN THE WESTERN DISTRICT OF LOUISIANA'
```

Bender's Immigration Bulletin    6    January 1, 2004

# Oakdale Justice:
# Routine Vacatur of Stays in the
# Western District of Louisiana

### By Nancy Morawetz

Lost in the judicial debate about the proper forum for habeas challenges to deportation is any realistic appraisal of what happens to petitioners whose cases are transferred to the Western District of Louisiana (WDLA). The WDLA looms large in immigration removal cases because it includes one of the major centers of immigration detention, the Oakdale Federal Detention Center. Indeed Oakdale was the site of detention for the petitioners in three court of appeals cases that considered the question of the proper forum for habeas challenges to removal orders.[1]

A study of habeas practice in the WDLA shows that Oakdale detainees whose cases are transferred to the WDLA face a court that consistently takes the position that habeas courts lack jurisdiction to stay a removal order, regardless of the circumstances. As a result, the WDLA denies stay requests and vacates stays entered by transferring courts. The WDLA's position on stays is far outside the mainstream of habeas courts and does not even represent the views advanced by government attorneys. The fact that no Oakdale detainee can obtain a stay once his or her case is transferred to the WDLA raises serious questions about whether the WDLA can be treated as an appropriate alternative forum to courts that exercise the full range of habeas powers.

As part of a larger study of habeas practice in the WDLA, I looked at cases transferred to the WDLA in the period following the Supreme Court's decision in INS v. St. Cyr.[2] I then looked at recent cases to determine whether certain patterns continue to be present.[3] Both the early and the recent cases show that when confronted with a question whether a habeas petitioner can obtain a stay of removal, the district court judges who handle the cases of detainees at Oakdale have ruled uniformly that they lack jurisdiction to enter a stay.[4]

---

[1] See, e.g., Henderson v. INS, 157 F.3d 106, 122-128 (2d Cir. 1998), cert. denied sub nom. Reno v. Navas, 526 U.S. 1004 (1999); Vasquez v. Reno, 233 F.3d 688 (1st Cir. 2000); Roman v. Ashcroft, 340 F.3d 314 (6th Cir. 2003) (rehearing pending). Courts considering the question of a proper forum generally focus on who is the custodian for purposes of 28 U.S.C. §2241; whether the court has personal jurisdiction over the custodian; and whether traditional venue considerations favor retention or transfer of the case.

[2] 533 U.S. 289 (2001). This period was selected because St. Cyr resolved doubts about the availability of habeas jurisdiction in the district courts. Prior to the St. Cyr decision, the WDLA, in accordance with the Fifth Circuit's position, dismissed habeas cases on the ground that there was no habeas jurisdiction to review removal orders. See Max-George v. Reno, 205 F.3d 194, 202 (5th Cir. 2000), vacated and remanded, 533 U.S. 945 (2001). The study included all cases included on PACER that were docketed in the WDLA between July 1, 2001 and December 31, 2001, and in which the words "Reno," "Ashcroft" or "immigration" appeared in the caption. Through PACER, it is possible to obtain imaged copies of almost all filings in cases docketed in the WDLA.

[3] The recent period includes all cases docketed between May 1, 2003 and August 1, 2003 in which the words "Ashcroft" or "immigration" appear in the caption. Searches with the terms BICE, Caplinger, Ridge, and Johnston did not identify any additional cases.

[4] Cases in the WDLA are assigned to one of five divisions of that court. Cases of detainees housed at the Federal Detention Center in Oakdale are assigned to the Lake Charles Division. Conversation with Robert Shemwell, Clerk of the Court, November 24, 2003. During the time period following the St. Cyr decision, Judge James T. Trimble, Jr. and Judge Edwin F. Hunter, Jr. served as the district court judges in that division. Currently, Judge Trimble and Judge Patricia Minaldi handle the cases in this division. In all cases in the study, Magistrate Judge Alonzo P. Wilson served as magistrate judge and wrote the recommended decisions in the cases of Oakdale detainees whose cases were transferred to the WDLA. I have identified one case filed by counsel in another division of the WDLA where a temporary TRO was granted in a removal case that included Oakdale detainees among the petitioners. See Mohamed v. Ashcroft, 02-CV-2484 (WDLA) (issuing temporary restraining orders and a stay pending appeal in case challenging removal of Somalis to a country without a functioning government). Mohamed was filed in the Monroe Division of the WDLA by attorneys on behalf of detainees in the WDLA with claims regarding removal to Somalia. When cases are filed by individuals pro se or are transferred by other courts, they are invariably assigned to the Lake Charles Division.

Table 1 (Appendix A) presents data on cases transferred with stays in the six month period following the *St. Cyr* decision.[5]

During the six months after the *St. Cyr* decision, fifteen cases were docketed in the WDLA with stays issued by the transferring court. The WDLA considered the propriety of nine of these stays and in every case it ruled that there was no jurisdiction to stay a removal order where the habeas petitioner was challenging the legality of the removal.

In the remaining six cases, the WDLA did not rule on the stays issued by the transferring court. None of these cases indicate a different view on the power of the court to grant or continue a stay. In two of the cases, the docket indicates that the habeas petitioner was deported while the stay was in effect and the court did not rule on the stay; in one case, the stay was not noted on the docket sheet and may not have been noticed by the court; in one case, the administrative proceedings were reopened, mooting the stay issue; in one case, the petitioner responded to the transfer by withdrawing his petition; finally, in one case, which was squarely under *St. Cyr*, the court did not address the stay but ultimately dismissed on the ground that the petitioner should be required to seek reopening administratively. It is unclear from the docket whether this last petitioner managed to have his case reopened prior to deportation. Not one case recognizes the court's power to issue stays of deportation.

Table 2 (Appendix B) presents data on cases transferred to the WDLA without stays in the six-month period following the *St. Cyr* decision.[6]

A total of thirty-one cases were transferred without a stay to the WDLA between July 2001 and December 2001 because the transferring court did not view itself as having jurisdiction or thought that the transferee court was a more appropriate forum. The WDLA did not enter a stay in any of these cases. When it issued a ruling on the stay issue, which it did in nine cases, it invariably found that it lacked jurisdiction to issue a stay.

Table 3 (Appendix C) summarizes the opinions issued by the WDLA in the two sets of cases. Altogether the WDLA issued eighteen opinions on the availability of stays of removal. In all eighteen cases, it ruled that there is no jurisdiction to issue a stay and therefore denied the stay or vacated the stay that had been entered by the transferring court. Every opinion issued by the WDLA on the stay issue states the same view: that there is no jurisdiction to issue a stay in a case that challenges a removal order.[7] In every opinion, the district court states that INA § 242(g), 8 U.S.C. § 1252 (g), bars courts from interfering with the execution of a removal order. After concluding that there is no jurisdiction under any circumstances to issue a stay, the opinions issued during this time period generally also cited INA § 242(a)(2)(B) as making stay decisions purely discretionary and INA §242(f) as requiring a showing that the removal order is prohibited as a matter of law. These alternative grounds were often footnoted.[8]

In the most recent time period, cases docketed between May 1, 2003 and August 1, 2003, the WDLA judges who hear pro se cases from Oakdale detainees as well as cases transferred from other courts have continued to reiterate the view that they lack jurisdiction to stay a removal order. During this time period, the WDLA issued four opinions and one additional report and recommendation on stays of removal sought by Oakdale detainees. Three of these cases involved cases transferred from other districts with a stay of removal. Two involved stay requests adjudicated in the WDLA.[9] All of the opinions concluded that a habeas court has no power to issue a stay. No alternative grounds are stated for denying the stay. This conclusion is found in opinions issued by both of the current judges in the Lake Charles Division of the WDLA, which handles all habeas petitions filed by Oakdale detainees. In those cases where the transferring court had issued a stay, the

---

[5] Seven of these cases were transferred from the Southern District of New York; four from the Eastern District of New York; two from the District of Connecticut; one from the Northern District of Florida and one from the District of Maryland.

[6] The districts transferring cases without stays were: District of Massachusetts (6); District of New Jersey (6); Eastern District of New York (5); District Court of the District of Columbia (4); Eastern District of Louisiana (3); District of Rhode Island (1); District of Connecticut (1); Northern District of California (1); Northern District of Georgia (1); Middle District of Louisiana (1) Middle District of Florida (1); Southern District of Florida (1).

[7] Similar language is found in a published decision from the WDLA that was issued prior to the Supreme Court's ruling in *St. Cyr. See Naidoo v. INS*, 339 F. Supp. 2d 755, 762 (W.D. La. 1999)(adopting opinion of Magistrate Judge).

[8] This study did not seek to assess whether stays ought to have been granted in these cases. This question turns on a number of factors, including the proper standard for the issuance of stays. Under the policy of the WDLA, no stay would be granted regardless of the strength of the claim. *[handwritten: very important note]*

[9] Many more petitioners might have sought a stay if the standard pro se habeas form indicated that it was available. The WDLA requires pro se petitioners to file their habeas petition on a standard form. It treats habeas filings that are not on such forms, including those in transferred cases, as "deficient pleadings." On the standard form, there is no space for seeking a stay nor is there any indication that the petitioner could seek a stay.

8 Bender's Immigration Bulletin            8                    January 1, 2004

WDLA lifted the stay.

The following quotation from *Lopez v. Ashcroft*, 2:03-CV-0103, July 17, 2003, is typical. Lopez challenged his removal on the ground that the ruling in *INS v. St. Cyr* should extend to cases in which the individual made a decision to go to trial. With respect to his request for a stay, the court stated:

> This court lacks jurisdiction to grant petitioner the relief he seeks. Title 8 U.S.C. §1252(g) deprives federal courts of jurisdiction to entertain claims directed towards the "commencement of proceedings," the "adjudication of cases," or the "execution of a removal order." *Reno v. American-Arab Anti-Discrimination Committee*, 119 S.Ct. 936 (1999); *Alvidres-Reyes v. Reno*, 180 F.3d 199 (5th Cir. 1999); *Sharif v. Ashcroft*, 280 F.3d 786 (7th Cir. 202[sic]). Petitioners' request for a stay was directed at the Attorney General's decision to execute petitioner's deportation/removal order. *Sharif supra* at 787.



Accordingly, the court rejected the request for a stay.

What is striking about these decisions is that they adopt a reading of INA § 242(g) that, to my knowledge, has not been advanced by the government in any case, including the cases in which the WDLA has announced that it is without power to issue a stay. In many cases, the government has argued that INA § 242(f) imposes a high standard of proof for granting a stay. But it has not, to my knowledge, argued that a habeas court has no jurisdiction to order a stay in a case that challenges the legality of the removal order. Furthermore, a clear majority of courts that have considered the question have rejected the idea that INA § 242(f) imposes a high standard for stays, ruling instead that stays of removal in habeas cases should be issued under the traditional standard for preliminary injunctions.[10]

The published cases relied on by the WDLA in its generic opinion on the lack of jurisdiction to issues stays all involved challenges to removal that did not question the legality of the removal itself. In *Sharif*, the petitioners had already pursued an administrative reopening in which they could obtain a stay. In addition, the Seventh Circuit was not presented with a challenge to the underlying removal order, but was instead being asked only to stay removal.[11] In other cases involving challenges to the removal itself, the Seventh Circuit has issued stays of removal.[12] In *Alvidres* the Fifth Circuit found that it lacked jurisdiction over a suit that it construed as seeking to require commencement of proceedings against persons who would be eligible to apply for suspension of deportation. It concluded that INA § 242(g) precluded suits that involved the commencement of proceedings. Neither of these published opinions concerned a challenge to the legality of a removal order.

In addition to these published cases, the WDLA has relied on an unpublished opinion issued by the Fifth Circuit this past summer in *Idokogi v. Ashcroft*.[13] In *Idokogi*, the petitioner challenged his removal on several grounds, including a claim that he was not convicted of an aggravated felony. The case was filed in the Eastern District of New York and transferred with a stay to the WDLA because Idokogi lacked ties to that jurisdiction. The WDLA vacated the stay and the Fifth Circuit affirmed in an unpublished opinion.[14] In that case, a Fifth Circuit panel described the petitioner as challenging whether he was properly classified as an "aggravated felon," which would bar him from eligibility for cancellation of removal. The Fifth Circuit panel stated that "the relief sought by Idokogi is connected 'directly and immediately' with the Attorney General's decision to commence removal proceedings

---

[10] Four courts of appeals have ruled that the standard for a stay is similar to the standard for a preliminary injunction. See *Maharaj v. Ashcroft*, 295 F.3d 963, 965 (9th Cir. 2002); *Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003); *Mohammed v. Reno*, 309 F.3d 95 (2d Cir. 2002); *Beijani v. INS*, 271 F.3d 670, 687 (6th Cir. 2001). See also *Kanivets v. Riley*, 286 F. Supp. 2d 460 (E.D. Pa. 2003); *Kayrouz v. Ashcroft*, 261 F. Supp. 2d 760, 763 (E.D. Ky. 2003). One circuit has adopted the view that a stay requires a showing of clear and convincing evidence that the removal is illegal. See *Weng v. United States Attorney General*, 287 F.3d 1335 (11th Cir. 2002). In each of these cases, the reported decisions describe the government's position as arguing for the higher standard of proof. There is no suggestion that the district court lacks jurisdiction to enter a stay.

[11] These factors make the *Sharif* case different from the typical habeas case that challenges the legality of a removal order. But even in situations where the petitioner is only seeking a stay, other courts have recognized the power of courts to enter stays where necessary to preserve their jurisdiction. See, e.g., *Michael v. INS*, 48 F.3d 657 (2d Cir. 1994).

[12] See *Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003)(citing unpublished opinion of the Seventh Circuit).

[13] *Idokogi v. Ashcroft*, 2003 U.S. App. LEXIS 8997. The text of the opinion in *Idokogi* also can be found on PACER. It is cited in the WDLA decision vacating a stay that was issued in *Andrade v. Ashcroft*, 270 F. Supp. 2d 344 (E.D.N.Y. 2003). See *Andrade v. Ashcroft*, 03-cv-1307 (W.D. La. Aug. 15, 2003) (lifting stay).

[14] The text of the unpublished opinion is not available on Lexis, Westlaw or the Fifth Circuit website. It can be found through the PACER listing for the district court case by the same name.

against him....The district court therefore correctly determined that it lacked jurisdiction to stay the order of removal." The WDLA reads this statement from a nonprecedential unpublished opinion as endorsing its view that removal orders cannot be stayed.[15]

Once stays are denied or lifted, a petitioner may be deported prior to the adjudication of his or her case and the case dismissed for failure to prosecute.[16]

There is no evidence in any of the cases that the transferring court was aware of the refusal of the WDLA to grant stays, or that the government attorneys informed the court of this practice. Indeed, the norms in the WDLA stand in stark contrast to the norms regarding stays as understood by many transferring courts. In the District of Connecticut, for example, the court has taken note of procedures instituted by the local United States Attorney's Office to assure that the court is notified prior to deportation of a person who has sought a stay, even if the court has not yet ruled on the stay.[17] That court plainly presumes that there will be an adjudication on the merits of stay requests. Similarly, in the Southern District of New York, pro se cases of Oakdale detainees are typically transferred with stays by order of the Chief Judge with a provision in the order allowing the government to seek vacatur of the stay for good cause shown. This mechanism is designed to assure an adjudication on the merits of a request for a stay.[18] Once transferred to the WDLA, however, the stay is vacated *sua sponte* by the WDLA based on its absolute position that there is never jurisdiction to issue a stay.[19]

The consequences of the WDLA practice are illustrated by a case transferred from the District of Connecticut. In *Jacques v. Ashcroft*,[20] a Connecticut resident filed a habeas petition in the District of Connecticut shortly after the *St. Cyr* decision based on the denial of eligibility for relief under INA § 212(c), a claim of derivative citizenship[21] and other claims regarding eligibility for relief from removal.[22] The District of Connecticut stayed removal. The government then sought transfer of the case to the WDLA. It acknowledged that there was a legitimate claim for §212(c) relief because Jacques's removal order was based on a plea that pre-dated the 1996 changes in the immigration laws. The government argued, however, that the case should be transferred to WDLA because Jacques was detained in the Oakdale facility. The case was transferred with a statement from the district judge that on transfer, any remanded proceeding could consider the citizenship claim. Five days later, the WDLA vacated the stay in accordance with its position that there is no jurisdiction to grant stays in habeas petitions. The WDLA subsequently dismissed the citizenship claim with prejudice on the ground that it should have been pursued in a petition for review to the court of appeals. With respect to the § 212(c) claim, the WDLA concluded that the petitioner should seek to reopen before the agency. It therefore dismissed that claim as well. Jacques, who despite the vacatur of the stay had not yet been deported, proceeded to file a motion to reopen, which was denied by the BIA.[23] Jacques then filed a supplemental pleading in the district court. The court rejected it on the ground that the case was closed. According to the docket sheet, Jacques was removed before he received notice of the court's rejection of his last pleading.

Had the district court in Connecticut known that the WDLA would summarily vacate the stay and then dismiss rather than remand the case, it may have retained jurisdiction to assure that Jacques received a

---

[15] *Andrade v. Ashcroft*, 03-cv-1307 (W.D. La. Aug. 15, 2003) (lifting stay).

[16] In many cases, the last entry on the docket sheet states that mail has been returned to the court because the petitioner is no longer at the Oakdale facility. In some cases, the entry specifically states that the person was removed or deported.

[17] *See Dennis v. INS*, 2002 U.S. Dist. LEXIS 3518 (D. Conn.); *Fuller v. INS*, 144 F. Supp. 2d 72 (D. Conn. 2000).

[18] *See also Smabaly v. Ashcroft*, 2002 WL 31729591 (S.D.N.Y.) (stay issued to preserve the court's jurisdiction).

[19] In the six months following *St Cyr*, the Southern District of New York transferred seven cases with stays to the WDLA. One petitioner withdrew his case. Of the remaining six cases, one person was deported during the stay, and four stays were vacated sua sponte. The only stay that was neither vacated nor violated was probably overlooked because it was not noted on the docket sheet.

[20] 01-CV-2160 (W.D. La.).

[21] According to the papers in the case, Jacques came to the United States at the age of five and was raised in Stamford, Connecticut by his father and stepmother. His father naturalized when he was ten.

[22] Jacques had filed two prior habeas petitions, one in Connecticut and one in the WDLA. The Connecticut petition was transferred to the WDLA. In both cases, the WDLA dismissed the case following the 5th Circuit's pre-*St. Cyr* rule that there was no habeas jurisdiction in for those persons barred by state from pursuing a petition for review in the court of appeals. *See Max-George v. Reno*, 205 F.3d 197 (5th Cir. 2000), *vacated and remanded*, 533 U.S. 945 (2001).

[23] Information on the BIA motion was obtained through the BIA case information phone number.

hearing on his claims. Indeed, given the government's position in its papers filed in the district court in the District of Connecticut, it probably appeared to the transferring court that there would be a stipulated remand and the only question was which court would "so order" the remand. Instead, Jacques lost the protection of the stay and was deported without an adjudication of either his citizenship claim or his claim for relief under §212(c).

In another case, *Roberts v. Ashcroft*,[24] the petitioner claimed that he was born in St. Thomas and was therefore a United States citizen and not subject to deportation. Roberts filed his habeas petition in Washington, D.C., and asserted that venue was proper in that district because it was the place of his residence. The government sought transfer of the case to WDLA, where the petitioner was held in detention. The government opposed a stay, but stated that it was informed that deportation would not happen for sixty days and that if there were a plan to deport Roberts, the government would notify the transferee court. No mention was made of any practice of the WDLA denying stays, which made any such notice meaningless. The district court in the District of Columbia transferred the case to the WDLA and ordered a stay of deportation. Following transfer, the magistrate judge in the WDLA recommended dismissal on the ground that the proper court was not the habeas court but rather the court of appeals through a petition for review. He also recommended vacatur of the stay. At this point, the petitioner gave up his legal battle and was deported despite his claim of citizenship.

Had the district court in the District of Columbia known that the WDLA would view itself as lacking jurisdiction over the citizenship claim, it might have kept the case or transferred it to another court that would exercise jurisdiction. Indeed, the district court in the District of Columbia may have assumed that the transferee court would be similarly concerned with assuring an adjudication of the merits of a claim of citizenship and would transfer the case again with a stay, if that were necessary.[25] But the WDLA saw no need to assure that any court would adjudicate the merits of the case.

Due to the position of the WDLA, transferring courts must understand that a petitioner whose case is transferred to the WDLA will lose all opportunity to stay deportation. Some courts have questioned whether this matters and have suggested that deportation during a habeas action is not problematic so long as the case is not moot.[26] A conclusion that a case is not moot, however, only means that there is still sufficient meaning to the adjudication for a case and controversy to exist.[27] In a criminal case, for example, a prisoner who has served a full sentence may still be allowed to challenge a conviction that has substantial collateral consequences. This has value, but it is not a substitute for the ability to challenge the incarceration itself. Similarly, in an immigration case, a petitioner challenging removal seeks to prevent the removal itself as well as any collateral consequences. The mere fact that the petitioner can prevent collateral consequences of the removal does not provide a habeas remedy for the underlying removal itself.

In many cases, petitioners face a range of harms from removal, including separation from family and forced removal to a country in which they have few if any ties. In some cases, deportation means removal to a country where the individual has never lived and where he or she will face imprisonment[28] or torture. For example, in one case docketed in the WDLA, the petitioner presented a claim under the Convention Against Torture. His case was dismissed for failure to meet technical filing requirements and, based on the docket entries, it appears

---

[24] 03-CV-1115 (W.D. La.).

[25] There is a division of authority on whether a habeas court can entertain claims of citizenship and nationality. Compare *Lee v. Ashcroft*, 2003 U.S. Dist. LEXIS 17585 (E.D.N.Y. May 27, 2003) (finding jurisdiction) with *Marquez-Almanzar v. Ashcroft*, 2003 U.S. Dist. LEXIS 9272 (S.D.N.Y. June 3, 2003). Those courts that view the court of appeals as the proper jurisdiction frequently transfer cases to that court when there is a citizenship question. See, e.g. Marquez; *Alvarez-Garcia v. I.N.S.*, 234 F. Supp. 2d 283 (S.D.N.Y. 2002). See also *Andrade v. Ashcroft*, 270 F. Supp. 2d 344 (E.D.N.Y.

2003)(stating expectation that the WDLA would determine whether transfer of a citizenship claim was appropriate).

[26] See, e.g., *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003)(rehearing pending). Although there is good authority that a case is not mooted by the deportation of the petitioner, the issue continues to be litigated. See, e.g., *Gonzalez v. INS*, 2003 U.S. Dist. LEXIS 21148 (S.D.N.Y.)(noting government argument that case became moot upon the deportation of the petitioner); *Obajuluwa v. Ashcroft*, 2003 U.S. Dist. LEXIS 17391 (N.D. Tex.) (describing government's arguments that court lacked jurisdiction to provide relief to person who had been deported following denial of stay request).

[27] *Spencer v. Kemna*, 523 U.S. 1 (1998).

[28] Two cases in the study involved persons born in the Bahamas who faced deportation to Haiti based on the claim that their parents were Haitian. Haiti has a policy of imprisoning those who arrive pursuant to deportation orders. See *Eugene v. INS*, 2003 U.S. Dist. LEXIS 47 (D. Mass. Jan. 3, 2003) (noting policy but upholding BIA determination that it does not constitute torture).

that he may have been deported to the country of his expected torture.[29] Under the WDLA rule on stays, he would have faced deportation while the case was adjudicated even if he had dotted every "i" and crossed every "t."

Furthermore, the government has argued in many cases that persons who have been deported are subject to separate charges of inadmissibility if they seek to return to this country, even if the removal itself was effectuated pursuant to a removal order that is later declared invalid.[30] Unless courts reject this view (as they should in light of the broad remedial powers of a habeas court)[31] many of those who are deported will have no remedy at any time from their illegal removal and will be permanently separated from their life in the United States.

The likelihood of removal prior to adjudication also underscores the absurdity of the argument that the WDLA is a more convenient forum to litigate habeas cases involving immigration matters. Although arguably there is value under some circumstances to litigating a case in the place where a person is detained, there is no particular value to having a case adjudicated in a place that will predictably cause the petitioner to be deported prior to full adjudication. Plainly, the convenience of the forum has little meaning when the more "convenient" forum will assure that it becomes very inconvenient for the petitioner and will require him or her to litigate the case from abroad.

The WDLA's practice of refusing to enter stays and vacating stays stands in stark contrast to the government's public assurances that stay procedures serve to protect against deportations in cases raising serious claims on the merits. In a question and answer document issued to justify proposed regulations that would deny § 212(c) relief to persons deported prior to the Supreme Court's decision in *INS v. St. Cyr*, the Executive Office for Immigration Review stated that most people who fell within the scope of *St. Cyr* were not deported because they were able to obtain stays pending resolution of the issue by the Supreme Court.[32] The EOIR also stated that judicial avenues were sufficient to keep people in the country while these issues percolated through the courts. That might have been true in some parts of the country. But it certainly was not and is not the case for those consigned to the WDLA system of habeas.

\* \* \*

Copyright © 2003 Nancy Morawetz.

Nancy Morawetz is a Professor of Clinical Law and teaches in the Immigrant Rights Clinic at New York University School of Law.

---

[29] *Emuchay v. INS*, 03-CV-1084 (W.D. La.). Emuchay typed his name onto his habeas petition where the form has a space that says: "Name." The petition was returned for his signature. He later submitted copies of Nigerian law, which were returned because they were not accompanied with a motion. The final docket entries show that mail sent to him at the Oakdale Detention Center was returned because he was no longer there.

[30] The government has frequently argued that those deported cannot return if they are subject to grounds of inadmissibility, even though the inadmissibility criteria would have been irrelevant had they not been deported. *See, e.g., Fuller v. INS*, 144 F. Supp. 2d at 80 (relying on transitional jurisdictional rules in IIRAIRA); *Gonzalez v. INS*, 2002 U.S. Dist. LEXIS 21148 (S.D.N.Y.) (declining to reach the question whether the court can order the return of a petitioner who was deported during adjudication of the habeas petition). In *Morgan v. INS*, No. 00-4188 (2d Cir.) for example, the government took the position that a person who was deported pursuant to an illegal removal order (which was subsequently vacated) was nonetheless subject to inadmissibility requirements when he sought to return to the United States. Although the parties ultimately stipulated to a resolution of that individual case, the issue remains to be resolved in other cases.

[31] *See generally*, 28 U.S.C. § 2243 (providing habeas court with the power to resolve a matter "as law and justice require"); *Dennis v. INS*, 2002 U.S. Dist. LEXIS 3518 (D. Conn.). *See also Wiedersperg v. INS*, 896 F.2d 1179 (9th Cir. 1990) (ordering reopening following deportation).

[32] *See* Executive Office for Immigration Review, FACT SHEET: St. Cyr Rule Affording Relief to Certain Criminal Aliens, Aug. 13, 2002 (available at http://www.usdoj.gov/eoir/press/02/StCyr/QA.html, visited, Sept. 9, 2003)(stating that, "generally, if an alien was denied 212(c) relief on eligibility grounds and appealed, deportation would be stayed pending further review of the case by the BIA or by a federal court).

---

**SUBSCRIPTION QUESTIONS?**

If you have any questions about the status of your subscription, please call your Matthew Bender representative, or call our Customer Service line at 1-800-833-9844.