

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

**OKONKWO, IGNATIUS UMEADI**
**EDC, 827 FORREST AVENUE**
**GADSDEN, AL 35901-0000**

**FEDERAL DET. CENTER-OAKDALE 2**
**P.O. Box 1128**
**OAKDALE, LA 71463**

**Name: OKONKWO, IGNATIUS UMEADI**          **A26-792-202**

**Date of this notice: 10/15/2004**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Frank Krider
Acting Chief Clerk

Enclosure

Panel Members:
    HESS, FRED

NEWMANE

NJ

**U.S. Department of Justice**
Executive Office for Immigration Review

Falls Church, Virginia 22041

**Decision of the Board of Immigration Appeals**

___

File:    A26-792-202 - Oakdale                                    Date:

In re:   OKONKWO, IGNATIUS UMEADI                          ¹OCT 1 5 2004

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Pro se

ON BEHALF OF DHS: Jerry A. Beatmann, Assistant Chief Counsel


ORDER:

   PER CURIAM. The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 1003.1(e)(4).


**FOR THE BOARD**

**IN BEHALF OF THE RESPONDENT:**

Ignatius Umeadi Okonkwo
BOP# 16057-265
FDC, 5060 E. Whatley Rd.
Oakdale, LA 71463

**IN BEHALF OF THE GOVERNMENT:**

Jerry A. Beatmann, Monique Harris, and
Carl E. Perry
Asst. District Counsels
Bureau of Immigration and Customs
Enforcement
Department of Homeland Security
1010 East Whatley Rd.
Oakdale, LA 71463

## DECISION OF THE IMMIGRATION JUDGE

The respondent is a male native and citizen of Nigeria who arrived in the United States on

November 22, 1995 and was paroled into this country. His parole expired on November 22,

1996. It is alleged that he is inadmissible because he is an immigrant not in possession of a valid

unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry

document. It is also alleged that he is inadmissible because on March 14, 1995 he was convicted

in the state of Connecticut of the offense of larceny in the sixth degree.

In pleading to the Notice to Appear, counsel for the respondent admitted the first, second,

and fifth allegations of fact contained therein. Allegations three and four were denied and the

hearing was continued in order to receive evidence from the Government regarding the

allegations which were denied.

When the hearing resumed on August 22, 2000, counsel for the Government offered a

copy of a printout from the Government's Nonimmigrant Information System which was

received without objection as Exhibit 2. That document establishes that on November 22, 1995,

the respondent was paroled into the United States until November 22, 1996.

Regarding the fourth allegation, that the respondent is an immigrant not in possession of a

2

valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid

entry document, the respondent testified that he had entered the United States for the first time in

1981. He said he entered without inspection from Canada. He said after six months he returned

to Canada and then to Nigeria. He said he came back to the United States in 1992 as a

nonimmigrant student. He said he did not leave the United States again until the Spring of 1995

when he returned to Nigeria. He said he came back to the United States on November 22, 1995

as alleged by the Government. Later in the hearing, he testified that he also left the United States

for six months in 1988 and returned to Nigeria.

The respondent testified that he married a native born citizen of the United States in 1984

and applied to the Immigration and Naturalization Service for adjustment of status based on his

marriage to her. He said she died in 1988 while he was in Nigeria. He testified that he then

applied to the Immigration and Naturalization Service in 1989 for adjustment of status under the

legalization provisions of section 245A of the Act. He said he was given a card to authorize his

employment and he has been renewing it every year since. A copy of the card issued in 1990

was received as Exhibit 3. The respondent testified that when he needed to travel to Nigeria in

1995, he contacted the Immigration and Naturalization Service and was issued a document.

Although he could not recall what it was, I concluded, and counsel for the respondent agreed,

that the document was an advance parole. The respondent testified that he lost that document

while he was in Nigeria and was informed by the Bulgarian airline on which he wanted to return

to the United States that he would have to contact the American Embassy. He said he did so and

was given two papers, one for the airline and one for the inspecting officer. A copy of one of

those was received as Exhibit 4.

3

Counsel for the respondent argued that the offense for which the respondent was convicted is not a crime involving moral turpitude. Petty larceny has long been held to be a crime involving moral turpitude; Matter of Esfandiary, 16 I&N Dec. 659 (BIA 1979); Matter of Garcia 11 I&N Dec. 521 (BIA 1966).

Counsel for the respondent also argued that since the respondent's conviction took place before he was issued an advance parole, the Government was constructively aware of it and should now be estopped from not admitting him. Equitable estoppel is a judicially devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or defense, regardless of its substantive validity; Matter of Hernandez-Puente, 20 I&N Dec. 335 (BIA 1991), citing M.D. Phelps v. Federal Emergency Management Agency, 785 F.2d 13 (1st Cir. 1986). The Supreme Court has recognized the possibility that the doctrine of equitable estoppel might be applied against the Government in a case where it is established that its agents engaged in "affirmative misconduct"; INS v. Hibi, 414 U.S. 5 (1973); Montana v. Kennedy, 366 U.S. 308 (1961). However, the Supreme Court has not yet decided whether even "affirmative misconduct" is sufficient to estop the Government from enforcing the immigration laws; INS v. Miranda, 459 U.S. 14 (1982). Some federal courts have found "affirmative misconduct" and applied estoppel against the Government; Corniel-Rodriquez v. INS, 532 F.2d 301 (2d Cir. 1976); Fano v. O'Neill, 806 F.2d 1262 (5th Cir. 1987).

Estoppel is an equitable form of action and only equitable rights are recognized. By contrast, the Board of Immigration Appeals can only exercise such discretion and authority conferred upon the Attorney General by law. The Board's jurisdiction is defined by the regulations and it has no jurisdiction unless it is affirmatively granted by the regulations. Therefore, the Board of

4

Immigration Appeals and Immigration Judges are without authority to apply the doctrine of

equitable estoppel against the Government so as to preclude it from undertaking a lawful course

of action that it is empowered to pursue by statute and regulation; Matter of Hernandez-Puente,

supra.

Counsel for the respondent also argued that the documents received as Exhibits 3 and 4

should be considered to constitute valid entry documents. Exhibit 3 merely allows an employer

to hire the respondent without fear of civil penalty. Exhibit 4 allowed a transportation company

to bring the respondent to the United States without fear of being fined. Neither document is a

valid entry document and the Government was correct in paroling the respondent rather than

admitting him; see Matter of G-A-C-, Interim Decision 3354 (BIA 1998) and Matter of Torres,

19 I&N Dec. 371 (BIA 1986).

The respondent was found to be removable as charged. As relief from removal, he

applied for cancellation of removal under sections 240A(a) and (b) of the Act, a waiver under

section 212(h) of the Act, and voluntary departure. Regarding the application for a 212(h)

waiver, the respondent testified that he has an illegitimate son who was born in 1997.

Counsel for the Government alleged that the respondent has an additional criminal record

beyond the offense charged in the Notice to Appear. He said his file reflects a 1987 arrest in

Minnesota for assault and terroristic threats. The respondent remembered the arrest. He testified

that the charge was reduced to something he could not recall, that he entered a plea of guilty to

the reduced charge, and that his sentence must have been suspended because he served no time in

jail. Counsel for the Government said his file also reflected a 1986 arrest for criminal damage to

property. However, the respondent could not recall being arrested on that charge.

5

Section 240A(a) of the Act provides that the Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien has been an alien lawfully admitted for permanent residence for not less than five years, has resided in the United States continuously for seven years after having been admitted in any status, and has not been convicted of any aggravated felony. In the instant case, the respondent is not an alien lawfully admitted for permanent residence. Therefore, he cannot qualify for cancellation of removal under section 240A(a) of the Act.

In order to qualify for cancellation of removal and adjustment of status under section 240A(b)(1) of the Act, an alien must establish that he or she has been physically present in the United States for a continuous period of not less than ten years immediately preceding the date of application, has been a person of good moral character during such period, and has not been convicted of an offense under section 212(a)(2), 237(a)(2), or 237(a)(3). The alien must also establish that his or her removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence. In the instant case, the respondent has been convicted of an offense under section 212(a)(2) and, since the conviction took place within the last ten years, cannot demonstrate the good moral character required. Therefore, he cannot qualify for cancellation of removal and adjustment of status under section 240A(b)(1) of the Act.

A waiver under section 212(h) of the Act is available only to immigrants. Since the respondent is not a lawful permanent resident of the United States and has no immigrant visa, he cannot qualify for that relief.

As to the application for voluntary departure, that relief is not available to an arriving

6

alien; section 240B(a)(4) of the Act. Since the respondent is an arriving alien, he cannot qualify for voluntary departure.

Since the respondent was removable and eligible for none of the forms of relief he sought, there was no purpose to be served by conducting further hearings in this matter. Accordingly, on August 25, 2000 the hearing scheduled for September 12, 2000 was canceled and I issued a written decision denying the applications for relief and ordering the respondent's removal to Nigeria.

The respondent appealed but in a decision dated October 12, 2000, the Board of Immigration Appeals found it was untimely. The respondent then filed a series of motions to reopen and reconsider. On November 8, 2001, the Board reopened proceedings and remanded the record to me to consider new evidence regarding the respondent's removability and eligibility for relief.

The respondent alleged that his larceny conviction had been vacated. He also alleged that the immigration authorities had approved his application for legalization. The Government disagreed arguing that the respondent has merely established that he attempted to file a legalization application between May 5, 1987 and May 4, 1988 and that the application was rejected by the Immigration and Naturalization Service or a Qualified Designated Entity. The Government argued that the respondent's status has yet to be adjusted to that of a temporary resident.

When the remanded hearing commenced on January 11, 2002, the respondent was represented by new counsel. A copy of the order vacating his larceny conviction was received without objection as Exhibit 5. Copies of correspondence from the Immigration and

7

Naturalization Service regarding the legalization application were received without objection as Exhibits 6 and 7. I determined that the respondent's status had not yet been adjusted to that of a temporary resident. The hearing was continued to a series of status conferences to see what action would be taken by the immigration authorities on the application.

Counsel for the respondent later moved to withdraw. His request was granted on April 22, 2003. The respondent elected to proceed pro se.

At a status conference conducted on March 11, 2004, counsel for the Government stated that the respondent's application for legalization has been denied. As proof thereof, he offered a copy of a decision dated February 17, 2004. The respondent stated that he had received a Notice of Intent to Deny dated January 13, 2004, but had not received the decision offered by counsel for the Government. He requested an opportunity to study the document before expressing any objection to it. The request was granted and the hearing was continued to March 23, 2004.

When the hearing resumed on March 23, the respondent had several objections to the Notice of Decision, but they all involved the correctness or the propriety of the decision, not its admissibility. Concerning the propriety of the decision, he offered several documents, including a copy of the Notice of Intent to Deny dated January 13, 2004 which was received as Exhibit 8 and a copy of transfer notice either from the Department of Homeland Security's office in Chicago, Illinois or informing the respondent that his application was transferred to that office. It was received as Exhibit 11. I note that the date on that document is February 18, 2004, a day after the date on the Notice of Decision. The respondent even accused counsel for the Government of fabricating the Notice of Decision which was offered.

If the respondent had not admitted receiving the Notice of Intent to Deny dated January

8



13, 2004, there might be some validity to his arguments about the authenticity of the Notice of

Decision. But since he admits receiving the Notice of Intent to Deny, it is logical that a Notice of

Decision would follow it sometime after the 30 days which were allowed to submit additional

evidence. As to the document received as Exhibit 11, it is obvious that the file was transferred

long before that document was mailed because the Notice of Intent to Deny was issued by the

Department of Homeland Security's office in Lee's Summit, Missouri on January 13, 2004 and

the Notice of Decision was issued by the same office about 34 or 35 days later. It appears that

the date on Exhibit 11 is due to a large backlog of correspondence at whatever office issued it. I

received the Notice of Decision over the respondent's objections as Exhibit 10. It reflects that

the respondent's application for legalization was denied because he failed to establish that he had

filed a timely written claim to class membership in any of the three class action lawsuits listed in

8 C. F. R. 245a.10.

Having resolved the issue of the respondent's application for legalization, I must now

return to his eligibility for relief from removal. He is not eligible for cancellation of removal

under section 240A(a) of the Act, a waiver under section 212(h) of the Act, and voluntary

departure for the reasons set forth above. As to his eligibility for cancellation of removal and

adjustment of status under section 240A(b) of the Act, I had originally found him ineligible

because his 1995 conviction precluded him from demonstrating the good moral character

required for that relief. Since the Board of Immigration Appeals remanded this matter, it has

decided Matter of Pickering, 23 I&N Dec. 621 (BIA 2003). In footnote 2 of that decision, the

Board held that the majority opinion in Renteria-Gonzalez v. INS, 322 F.3d 804, 812 (5th Cir.

2002) states that a vacated conviction remains valid for purposes of the immigration laws

9

irrespective of the reasons why the conviction was vacated. Although the Board declined to apply that decision outside the jurisdiction of the Fifth Circuit, it appears to be binding within the Fifth Circuit's jurisdiction. Therefore, I must find that the respondent cannot establish the good moral character required for cancellation of removal and adjustment of status under section 240A(b) of the Act.

Since the respondent is not eligible for the relief sought, there is no point in receiving his applications for relief or in conducting further hearings in this matter. Accordingly, the hearing scheduled for April 30, 2004 is canceled and the following order is entered.

**ORDER:**    It is ordered that the respondent be removed from the United States to Nigeria on the charges contained in the Notice to Appear.

April 14, 2004
Date

Charles A. Wiegand, III
Immigration Judge

10



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

**OKONKWO, IGNATIUS UMEADI**
**EDC, 827 FORREST AVENUE**
**GADSDEN, AL 35901-0000**

**FEDERAL DET. CENTER-OAKDALE 2**
**P.O. Box 1128**
**OAKDALE, LA 71463**

**Name: OKONKWO, IGNATIUS UMEADI**          **A26-792-202**

**Date of this notice: 10/15/2004**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Frank Krider
Acting Chief Clerk

Enclosure

Panel Members:
     HESS, FRED

NEWMANIE

NJ

**U.S. Department of Justice**
**Executive Office for Immigration Review**

**Decision of the Board of Immigration Appeals**

**Falls Church, Virginia 22041**

File:    A26-792-202 - Oakdale

Date:

In re:   OKONKWO, IGNATIUS UMEADI

¹OCT 1 5 2004

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Pro se

ON BEHALF OF DHS: Jerry A. Beatmann, Assistant Chief Counsel

ORDER:

PER CURIAM. The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 1003.1(e)(4).

FOR THE BOARD

**IN BEHALF OF THE RESPONDENT:**

Ignatius Umeadi Okonkwo
BOP# 16057-265
FDC, 5060 E. Whatley Rd.
Oakdale, LA 71463

**IN BEHALF OF THE GOVERNMENT:**

Jerry A. Beatmann, Monique Harris, and
Carl E. Perry
Asst. District Counsels
Bureau of Immigration and Customs
Enforcement
Department of Homeland Security
1010 East Whatley Rd.
Oakdale, LA 71463

## DECISION OF THE IMMIGRATION JUDGE

The respondent is a male native and citizen of Nigeria who arrived in the United States on November 22, 1995 and was paroled into this country. His parole expired on November 22, 1996. It is alleged that he is inadmissible because he is an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document. It is also alleged that he is inadmissible because on March 14, 1995 he was convicted in the state of Connecticut of the offense of larceny in the sixth degree.

In pleading to the Notice to Appear, counsel for the respondent admitted the first, second, and fifth allegations of fact contained therein. Allegations three and four were denied and the hearing was continued in order to receive evidence from the Government regarding the allegations which were denied.

When the hearing resumed on August 22, 2000, counsel for the Government offered a copy of a printout from the Government's Nonimmigrant Information System which was received without objection as Exhibit 2. That document establishes that on November 22, 1995, the respondent was paroled into the United States until November 22, 1996.

Regarding the fourth allegation, that the respondent is an immigrant not in possession of a

2

valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid

entry document, the respondent testified that he had entered the United States for the first time in

1981. He said he entered without inspection from Canada. He said after six months he returned

to Canada and then to Nigeria. He said he came back to the United States in 1992 as a

nonimmigrant student. He said he did not leave the United States again until the Spring of 1995

when he returned to Nigeria. He said he came back to the United States on November 22, 1995

as alleged by the Government. Later in the hearing, he testified that he also left the United States

for six months in 1988 and returned to Nigeria.

       The respondent testified that he married a native born citizen of the United States in 1984

and applied to the Immigration and Naturalization Service for adjustment of status based on his

marriage to her. He said she died in 1988 while he was in Nigeria. He testified that he then

applied to the Immigration and Naturalization Service in 1989 for adjustment of status under the

legalization provisions of section 245A of the Act. He said he was given a card to authorize his

employment and he has been renewing it every year since. A copy of the card issued in 1990

was received as Exhibit 3. The respondent testified that when he needed to travel to Nigeria in

1995, he contacted the Immigration and Naturalization Service and was issued a document.

Although he could not recall what it was, I concluded, and counsel for the respondent agreed,

that the document was an advance parole. The respondent testified that he lost that document

while he was in Nigeria and was informed by the Bulgarian airline on which he wanted to return

to the United States that he would have to contact the American Embassy. He said he did so and

was given two papers, one for the airline and one for the inspecting officer. A copy of one of

those was received as Exhibit 4.

3

Counsel for the respondent argued that the offense for which the respondent was convicted is not a crime involving moral turpitude. Petty larceny has long been held to be a crime involving moral turpitude; <u>Matter of Esfandiary</u>, 16 I&N Dec. 659 (BIA 1979); <u>Matter of Garcia</u> 11 I&N Dec. 521 (BIA 1966).

Counsel for the respondent also argued that since the respondent's conviction took place before he was issued an advance parole, the Government was constructively aware of it and should now be estopped from not admitting him. Equitable estoppel is a judicially devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or defense, regardless of its substantive validity; <u>Matter of Hernandez-Puente</u>, 20 I&N Dec. 335 (BIA 1991), citing <u>M.D. Phelps v. Federal Emergency Management Agency</u>, 785 F.2d 13 (1st Cir. 1986). The Supreme Court has recognized the possibility that the doctrine of equitable estoppel might be applied against the Government in a case where it is established that its agents engaged in "affirmative misconduct"; <u>INS v. Hibi</u>, 414 U.S. 5 (1973); <u>Montana v. Kennedy</u>, 366 U.S. 308 (1961). However, the Supreme Court has not yet decided whether even "affirmative misconduct" is sufficient to estop the Government from enforcing the immigration laws; <u>INS v. Miranda</u>, 459 U.S. 14 (1982). Some federal courts have found "affirmative misconduct" and applied estoppel against the Government; <u>Corniel-Rodriquez v. INS</u>, 532 F.2d 301 (2d Cir. 1976); <u>Fano v. O'Neill</u>, 806 F.2d 1262 (5th Cir. 1987).

Estoppel is an equitable form of action and only equitable rights are recognized. By contrast, the Board of Immigration Appeals can only exercise such discretion and authority conferred upon the Attorney General by law. The Board's jurisdiction is defined by the regulations and it has no jurisdiction unless it is affirmatively granted by the regulations. Therefore, the Board of

4

Immigration Appeals and Immigration Judges are without authority to apply the doctrine of

equitable estoppel against the Government so as to preclude it from undertaking a lawful course

of action that it is empowered to pursue by statute and regulation; Matter of Hernandez-Puente,

supra.

Counsel for the respondent also argued that the documents received as Exhibits 3 and 4

should be considered to constitute valid entry documents. Exhibit 3 merely allows an employer

to hire the respondent without fear of civil penalty. Exhibit 4 allowed a transportation company

to bring the respondent to the United States without fear of being fined. Neither document is a

valid entry document and the Government was correct in paroling the respondent rather than

admitting him; see Matter of G-A-C-, Interim Decision 3354 (BIA 1998) and Matter of Torres,

19 I&N Dec. 371 (BIA 1986).

The respondent was found to be removable as charged. As relief from removal, he

applied for cancellation of removal under sections 240A(a) and (b) of the Act, a waiver under

section 212(h) of the Act, and voluntary departure. Regarding the application for a 212(h)

waiver, the respondent testified that he has an illegitimate son who was born in 1997.

Counsel for the Government alleged that the respondent has an additional criminal record

beyond the offense charged in the Notice to Appear. He said his file reflects a 1987 arrest in

Minnesota for assault and terroristic threats. The respondent remembered the arrest. He testified

that the charge was reduced to something he could not recall, that he entered a plea of guilty to

the reduced charge, and that his sentence must have been suspended because he served no time in

jail. Counsel for the Government said his file also reflected a 1986 arrest for criminal damage to

property. However, the respondent could not recall being arrested on that charge.

5

Section 240A(a) of the Act provides that the Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien has been an alien lawfully admitted for permanent residence for not less than five years, has resided in the United States continuously for seven years after having been admitted in any status, and has not been convicted of any aggravated felony. In the instant case, the respondent is not an alien lawfully admitted for permanent residence. Therefore, he cannot qualify for cancellation of removal under section 240A(a) of the Act.

In order to qualify for cancellation of removal and adjustment of status under section 240A(b)(1) of the Act, an alien must establish that he or she has been physically present in the United States for a continuous period of not less than ten years immediately preceding the date of application, has been a person of good moral character during such period, and has not been convicted of an offense under section 212(a)(2), 237(a)(2), or 237(a)(3). The alien must also establish that his or her removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence. In the instant case, the respondent has been convicted of an offense under section 212(a)(2) and, since the conviction took place within the last ten years, cannot demonstrate the good moral character required. Therefore, he cannot qualify for cancellation of removal and adjustment of status under section 240A(b)(1) of the Act.

A waiver under section 212(h) of the Act is available only to immigrants. Since the respondent is not a lawful permanent resident of the United States and has no immigrant visa, he cannot qualify for that relief.

As to the application for voluntary departure, that relief is not available to an arriving

6

alien; section 240B(a)(4) of the Act. Since the respondent is an arriving alien, he cannot qualify for voluntary departure.

Since the respondent was removable and eligible for none of the forms of relief he sought, there was no purpose to be served by conducting further hearings in this matter. Accordingly, on August 25, 2000 the hearing scheduled for September 12, 2000 was canceled and I issued a written decision denying the applications for relief and ordering the respondent's removal to Nigeria.

The respondent appealed but in a decision dated October 12, 2000, the Board of Immigration Appeals found it was untimely. The respondent then filed a series of motions to reopen and reconsider. On November 8, 2001, the Board reopened proceedings and remanded the record to me to consider new evidence regarding the respondent's removability and eligibility for relief.

The respondent alleged that his larceny conviction had been vacated. He also alleged that the immigration authorities had approved his application for legalization. The Government disagreed arguing that the respondent has merely established that he attempted to file a legalization application between May 5, 1987 and May 4, 1988 and that the application was rejected by the Immigration and Naturalization Service or a Qualified Designated Entity. The Government argued that the respondent's status has yet to be adjusted to that of a temporary resident.

When the remanded hearing commenced on January 11, 2002, the respondent was represented by new counsel. A copy of the order vacating his larceny conviction was received without objection as Exhibit 5. Copies of correspondence from the Immigration and

7

Naturalization Service regarding the legalization application were received without objection as
Exhibits 6 and 7. I determined that the respondent's status had not yet been adjusted to that of a
temporary resident. The hearing was continued to a series of status conferences to see what
action would be taken by the immigration authorities on the application.

Counsel for the respondent later moved to withdraw. His request was granted on April
22, 2003. The respondent elected to proceed pro se.

At a status conference conducted on March 11, 2004, counsel for the Government stated
that the respondent's application for legalization has been denied. As proof thereof, he offered a
copy of a decision dated February 17, 2004. The respondent stated that he had received a Notice
of Intent to Deny dated January 13, 2004, but had not received the decision offered by counsel
for the Government. He requested an opportunity to study the document before expressing any
objection to it. The request was granted and the hearing was continued to March 23, 2004.

When the hearing resumed on March 23, the respondent had several objections to the
Notice of Decision, but they all involved the correctness or the propriety of the decision, not its
admissibility. Concerning the propriety of the decision, he offered several documents, including
a copy of the Notice of Intent to Deny dated January 13, 2004 which was received as Exhibit 8
and a copy of transfer notice either from the Department of Homeland Security's office in
Chicago, Illinois or informing the respondent that his application was transferred to that office.
It was received as Exhibit 11. I note that the date on that document is February 18, 2004, a day
after the date on the Notice of Decision. The respondent even accused counsel for the
Government of fabricating the Notice of Decision which was offered.

If the respondent had not admitted receiving the Notice of Intent to Deny dated January

8

13, 2004, there might be some validity to his arguments about the authenticity of the Notice of Decision. But since he admits receiving the Notice of Intent to Deny, it is logical that a Notice of Decision would follow it sometime after the 30 days which were allowed to submit additional evidence. As to the document received as Exhibit 11, it is obvious that the file was transferred long before that document was mailed because the Notice of Intent to Deny was issued by the Department of Homeland Security's office in Lee's Summit, Missouri on January 13, 2004 and the Notice of Decision was issued by the same office about 34 or 35 days later. It appears that the date on Exhibit 11 is due to a large backlog of correspondence at whatever office issued it. I received the Notice of Decision over the respondent's objections as Exhibit 10. It reflects that the respondent's application for legalization was denied because he failed to establish that he had filed a timely written claim to class membership in any of the three class action lawsuits listed in 8 C. F. R. 245a.10.

Having resolved the issue of the respondent's application for legalization, I must now return to his eligibility for relief from removal. He is not eligible for cancellation of removal under section 240A(a) of the Act, a waiver under section 212(h) of the Act, and voluntary departure for the reasons set forth above. As to his eligibility for cancellation of removal and adjustment of status under section 240A(b) of the Act, I had originally found him ineligible because his 1995 conviction precluded him from demonstrating the good moral character required for that relief. Since the Board of Immigration Appeals remanded this matter, it has decided Matter of Pickering, 23 I&N Dec. 621 (BIA 2003). In footnote 2 of that decision, the Board held that the majority opinion in Renteria-Gonzalez v. INS, 322 F.3d 804, 812 (5th Cir. 2002) states that a vacated conviction remains valid for purposes of the immigration laws

9

irrespective of the reasons why the conviction was vacated. Although the Board declined to

apply that decision outside the jurisdiction of the Fifth Circuit, it appears to be binding within the

Fifth Circuit's jurisdiction. Therefore, I must find that the respondent cannot establish the good

moral character required for cancellation of removal and adjustment of status under section

240A(b) of the Act.

Since the respondent is not eligible for the relief sought, there is no point in receiving his

applications for relief or in conducting further hearings in this matter. Accordingly, the hearing

scheduled for April 30, 2004 is canceled and the following order is entered.

**ORDER:** It is ordered that the respondent be removed from the United States to Nigeria on
the charges contained in the Notice to Appear.

April 14, 2004
Date

Charles A. Wiegand, III
Immigration Judge

10