```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF CONNECTICUT

IGNATIUS UMEADI OKONKWO      :

        Petitioner,          :    CIV. NO. 3:02cv1733(AWT)

        v.                   :

JOHN ASHCROFT, ATTORNEY      :
GENERAL OF THE UNITED        :
STATES, et al.               :

        Respondents.         :    March 15, 2005
```

## RESPONSE TO ORDER TO SHOW CAUSE

Respondents John Ashcroft[1], James W. Ziglar[2], John P. Weiss[3], Caryl Thompson[4], United States Department of Justice and the Immigration and Naturalization Service[5], (collectively "the Respondents"), through undersigned counsel, hereby respectfully submit this response to the Court's order to show cause.

---

[1]Alberto Gonzalez was recently sworn in as United States Attorney General replacing John Ashcroft. Pursuant to Rule 25(d) Fed. R. Civ. P. he should be substituted as respondent.

[2]James W. Ziglar was the former Commissioner of the Immigration and Naturalization Service.

[3]John P. Weiss was the former Connecticut Officer in Charge of the Immigration and Naturalization Service.

[4]District Director Thompson retired in September, 2002, from his position as District Director in New Orleans, Louisiana. The acting District Director is Michael J. Conway.

[5] On March 1, 2003, the Immigration and Naturalization Service ("INS") was abolished and its functions transferred to three bureaus within the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2178. The enforcement functions of INS were transferred to the Bureau of Immigration and Customs Enforcement ("BICE") while its service functions were transferred to the Bureau of Citizenship and Immigration Services ("BCIS").

Petitioner, a citizen of Nigeria, is in custody in the Etowah County Detention Center, in Gadsen, Alabama, pending his removal from the United States. As explained below, petitioner has not named the proper respondent in the petition and this Court lacks jurisdiction over the proper respondent. Therefore, the petition should be dismissed for lack of jurisdiction. In the alternative, the petition should be transferred to the Western District of Louisiana, which is the appropriate venue for these proceedings.

## BACKGROUND

Petitioner is a native and citizen of Nigeria who arrived in the United States at New York, New York, on November 22, 1995, and was paroled into this country. (See Exhibit A, Decision of Immigration Judge). His parole expired on November 22, 1996. (See id.)

On June 2, 2000, the INS served petitioner with a Notice to Appear which charged him with removability under §§ 212(a)(2)(A)(i)(I) and (7)(a)(i)(I) of the INA, 8 U.S.C. §§ 1182(a)(2)(A)(i)(I) and (7)(A)(i)(I), as an alien who has been convicted of a crime involving moral turpitude (other than a purely political offense), and as an immigrant who, at the time of application for admission, was not in possession of a valid entry document.

After a hearing in Oakdale, Louisiana, on August 25, 2000, an immigration judge ("IJ") found Petitioner removable. (See id.)

2

Petitioner appealed that decision, but on October 12, 2000, the Board of Immigration Appeals ("BIA") dismissed petitioner's appeal as untimely. (See id.)  On November 18, 2001, the BIA reopened petitioner's proceedings and remanded the matter back to an IJ to consider petitioner's removability and eligibility for relief. (See id.)  After several hearings, on April 14, 2004, the IJ concluded that petitioner was removable as charged in the notice to appear, denied him the relief requested and ordered that he be removed from the United States to Nigeria. (See id.)  On October 15, 2004, the BIA affirmed the IJ's decision and thus petitioner has an administrative final order of removal. (See Exhibit B, BIA Decision).

In the instant habeas petition, petitioner appears to challenge his final order of removal as well as his continued detention pending his removal from the United States. For the reasons set forth below, the Court should dismiss the petition for lack of jurisdiction or, in the alternative, transfer the petition to the Western District of Louisiana, where venue is proper.

**ARGUMENT**

**THE HABEAS PETITION SHOULD BE DISMISSED FOR LACK OF JURISDICTION BECAUSE PETITIONER HAS NOT NAMED THE PROPER RESPONDENT IN THIS ACTION**

**I.   The Proper Respondent in an Action Challenging Present Confinement Action is the Individual with day-to-day Control Over Petitioner**

A writ of habeas corpus is an order "upon the person who holds [the prisoner] in what is alleged to be unlawful custody." Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-95 (1973) (emphasis added); Rumsfeld v. Padilla, ___ U.S. ___, 124 S. Ct. 2711, 2717 (2004) ("there is generally only one proper respondent to a given prisoner's habeas petition."); see also 28 U.S.C. § 2241(c). A detainee's "custodian" for purposes of habeas jurisdiction "is the warden of the prison or facility where the detainee is held[,] . . . because it is the warden that has day-to-day control over the prisoner and who can produce the actual body." Yi v. Maugans, 24 F.3d 500, 507 (3d Cir. 1994) (citations omitted). As the Supreme Court recently stated in Padilla, "[t]his custodian . . . is 'the person' with the ability to produce the prisoner's body before the habeas court." 124 S. Ct. at 2718; accord Billiteri v. U.S. Bd. of Parole, 541 F.2d 938, 948 (2d Cir. 1976) (warden of

4

correctional facility where petitioner is incarcerated, not parole board, is "custodian" of detainee "who is under the control of [the] warden and confined in a prison, and who is seeking, in a habeas corpus action, to be released from precisely that form of confinement"); Guerra v. Meese, 786 F.2d 414, 416 (D.C. Cir. 1986) (warden of petitioner, not parole board, is proper respondent to habeas petition because parole board does not have day-to-day control).

In accord with the statutory language and the immediate custodian rule reaffirmed in Padilla, in a core habeas petition challenging present physical confinement, "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Padilla, 124 S. Ct. at 2718. Padilla thus narrowly circumscribes the jurisdictional inquiry conducted by a court presented with a core petition. Because petitioner cannot show any exceptions to the immediate custodian rule, his challenge to his present physical confinement should be dismissed because he has not sued the proper respondent.

Petitioner does not claim that he is presently detained in Connecticut. Indeed, petitioner concedes that he is

5

presently detained at the Etowah County Detention Center in Gadsen, Alabama. As such, the proper respondent to this habeas petition challenging petitioner's continued detention pending removal is the warden of Etowah County Detention Center in Gadsen, Alabam, the facility where petitioner is now confined. See Padilla, 124 S. Ct. at 2718-20 (explaining that in habeas challenges to "present confinement[,]" the proper respondent is the warden of the facility where a prisoner is being held); accord Billiteri, 541 F.2d at 948 (warden of correctional facility where petitioner is incarcerated, not parole board, is "custodian" of detainee "who is under the control of [the] warden and confined in a prison, and who is seeking, in a habeas corpus action, to be released from precisely that form of confinement"); Deng v. Garcia, 352 F. Supp.2d 373, 375-76 (E.D.N.Y. 2005) (holding that post-Padilla challenges to immediate physical detention must be addressed to immediate custodian); Drakoulis v. Ashcroft, __ F. Supp.2d __, 2005 WL 366977 (S.D.N.Y. 2005) (same). This is so because the warden of the Etowah Detention Center exercises day-to-day control over him, not any of the Respondents named in this habeas petition.[6]  See Padilla, 124 S. Ct. at 2718-20;

---

[6] In the event that the Court concludes that, because petitioner is detained for immigration purposes, the BICE Field

6

Billiteri, 541 F.2d 938, 948 (2d Cir. 1976); Yi, 24 F.3d at 507; Guerra, 786 F.2d at 416; Carvajales-Cepeda, 966 F. Supp. at 208.

Accordingly, petitioner's challenge to his present physical detention should be dismissed for lack of jurisdiction based on his failure to name the proper respondent.[7]

To the extent petitioner is challenging his final order of removal, which is unclear, the proper respondent is the BICE Field Office Director who has responsibility for petitioner's removal. Padilla, 124 S. Ct. at 2718-22. Thus, for purposes of challenging his final order of removal, petitioner's custodian, and the only proper respondent, is the BICE Field Office Director for the Western District of Louisiana, not the BICE Field Office Director in Hartford, who has no control over petitioner's removal since petitioner has been detained in Louisiana, and now, Alabama. This is the official with direct supervisory authority over petitioner's removal proceedings, see 8 C.F.R. §§ 100.2(d)(2)(ii) and 100.4(b)(28), and who would be in a position to respond to any

---

Office Director in the Western District of Louisiana is his custodian, for the reasons that follow, this Court does not have personal jurisdiction over the Field Office Director.

[7] Notably, there is no evidence that petitioner's detention is unique in some way that would provide a basis for a departure from the immediate custodian rule reaffirmed in Padilla. See Padilla, 124 S. Ct. at 2721.

7

court orders concerning petitioner's final order of removal. See Michael v. INS, 870 F. Supp. 44, 46 (S.D.N.Y. 1994) (holding that New Orleans INS District Director was petitioner's custodian where petitioner was detained at Oakdale even though released on bond; transferring case to Western District of Louisiana); Carvajales-Cepeda, 966 F. Supp. at 208-209 (same); Vasquez, 233 F. 3d at 697 (directing the district court to either dismiss the petition or transfer it to the Western District of Louisiana); Santiago v. INS, 134 F. Supp.2d 1102, 1104 (N.D. Cal. 2001) (holding that proper respondent to immigration habeas petition is district director for district in which alien is being held and that California's long arm statute did not provide basis for personal jurisdiction over INS district director in Atlanta). Consequently, the District Director of the Western District of Louisiana would arguably be the proper respondent to this habeas petition.[8]

This Court, however, does not have personal jurisdiction over the BICE Field Office Director for the Western District of Louisiana.[9] "Personal jurisdiction of a federal court over a

---

[8] As stated earlier, District Director Thompson retired in September, 2002, from his position as District Director in New Orleans, Louisiana. The acting District Director is Michael J. Conway. However, regardless of who is District Director in the Western District of Louisiana, as explained above, this Court does not have personal jurisdiction over either of them.

[9] Petitioner bears the burden of establishing that the court has personal jurisdiction over the proper respondent. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).

8

non-resident defendant is governed by the law of the state in which the court sits – subject, of course, to certain constitutional limitations of due process." Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998). In resolving issues concerning personal jurisdiction, "a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Indymac Mortgage Holdings, Inc. v. Reyad, 167 F. Supp.2d 222, 231-37 (D. Conn. 2001).

The first question, then, is whether the BICE Field Office Director is amenable to service of process under Connecticut's long-arm statute.[10] As the Second Circuit noted in Henderson, 157

---

[10] In Henderson, the Second Circuit was discussing New York's long-arm statute, N.Y. C.P.L.R. § 302. The Connecticut long-arm statute was modeled after the New York statute. In Zartolas v. Nisenfeld, 184 Conn. 471, 474 (1981), the Connecticut Supreme Court held that "[t]he General Statutes do not define what the phrase 'transacts any business' means in the context of § 52-59b. We note, however, that in enacting § 52-59b, the legislature used New York Civil Practice Law § 302 (McKinney 1980-81 Supp.) as a model. Gandolfo v. Alford, 31 Conn.Sup. 417, 424, 333 A.2d 65 (1975); 1 Stephenson, Conn. Civ. Proc. (2d Ed.) § 261, n.318. We therefore find pertinent the judicial interpretation given to that New York statute." See also Marczeski v. Kamba, 2001 WL 237204, *1 (D. Conn. 2001)(AWT) (noting that Connecticut's long-arm statute is nearly identical to New York's).

Accordingly, applying Connecticut law, see Zartolas, the Henderson Court's interpretation of New York's long-arm statute is equally applicable to the interpretation of Connecticut's

F.3d at 123, referring in that case to the New York law, in order to gain the benefit of the Connecticut long-arm statute petitioner must demonstrate that the BICE Field Office Director purposefully availed himself of the privilege of conducting business within the State of Connecticut <u>and</u> that petitioner's cause of action arose out of the Director's activities within the state.[11] "A suit will be deemed to have arisen out of a party's activities in [Connecticut] if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in [Connecticut]." <u>Id</u>.

Connecticut's Long-Arm Statute, Connecticut General Statutes § 52-59b(a), provides as follows:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or over the executor or administrator of such nonresident individual or foreign partnership, who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or

---

long-arm statute.

[11] In <u>Henderson</u>, the Second Circuit did not decide whether the INS District Director in New Orleans, Louisiana was subject to New York's long-arm statute. Although certified to it, the New York Court of Appeals declined to reach the issue, see <u>Yesil v. Reno</u>, 92 N.Y.2d 45 (1998), and the Supreme Court denied the government's petition for certiorari. See <u>Reno v. Navas</u>, 526 U.S. 1004 (1999). The Second Circuit requested additional briefs from the parties on the issue of personal jurisdiction but prior to submitting briefs, the parties settled the matter. See <u>Yesil v. Reno</u>, 175 F.3d 287 (2d Cir. 1999).

> property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Connecticut General Statutes § 52-59b. The only way that the BICE Field Office Director could fall within Connecticut's long-arm statute is under subsection (a)(1) of the statute – if he transacted business in the state – and, further, as <u>Henderson</u> held, petitioner's cause of action arose out of the Director's activities within Connecticut. See <u>Henderson</u>, 157 F.3d at 123.

Here, there is no evidence or allegation that the BICE Field Office Director conducted any business within Connecticut related to petitioner. Therefore, there is no "articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in" Connecticut, as the <u>Henderson</u> Court required. <u>Henderson</u>, 157 F.3d at 123. Thus, there is no way petitioner can fulfill the requirement of showing that the BICE Field Office Director falls within Connecticut's long-arm statute.

Moreover, when the Court compares this case with the facts in <u>Henderson</u>, it is bound to come to the conclusion that the BICE Field Office Director transacted no business in Connecticut

11

concerning petitioner or this case. In <u>Henderson</u>, the Second Circuit noted the following facts:

> In Yesil's case, the district court found that Director Caplinger 'ha[d] purposefully thrust himself into the Southern District of New York.' <u>Yesil</u>, 958 F.Supp. at 835. To begin with, the court noted that the INS was well aware of Yesil's plans to return to New York City once he was released on bond. And, after his return, INS officials in Louisiana engaged in negotiations over an increase in the bond amount with Yesil's counsel, who was located in New York. Subsequently, District Director Caplinger sent two letters to New York – one to Yesil's counsel confirming the increased bond amount, and one to Yesil directing him to surrender to INS officials in Louisiana. The government also sought Yesil's surrender in the proceedings before the district court and, as a condition of the court's stay of his surrender, requested that Yesil be directed to report regularly both in person and by telephone to the INS offices in New York City. The composite of these factors led the district court to conclude that District Director Caplinger properly fell within the ambit of the New York long-arm statute. <u>See id</u>. at 835-36.
>
> In Mojica's case, the district court found that the petitioner, who had lived in Queens, New York, ever since he came to the United States in 1972, was only transferred to the INS' Oakdale detention facility in Louisiana after he had been taken into custody by the INS in its New York City offices and placed in the INS' New York detention facility. <u>See</u> <u>Mojica</u>, 970 F.Supp. at 141-42. The district court also noted that Mojica's New York attorney had taken part in a telephonic bond hearing with officials at Oakdale to secure his client's release. Bond having been arranged, Mojica returned home to New York with Caplinger's full knowledge. Subsequently, District Director Caplinger sought Mojica's surrender pending the resolution of his habeas petition and ordered him to return to Oakdale (using the government's New York-based attorneys to implement and enforce a deportation order against him). These actions were collectively deemed by the district court to satisfy the New York long-arm statute. <u>See id</u>. at 166.

Notwithstanding these contacts, the <u>Henderson</u> court still stated

that "[t]he district courts may have been correct that Director Caplinger 'purposefully availed' himself of the privilege of conducting business in New York, but we cannot say so with sufficient confidence to affirm their holdings in this regard."

Here, on the other hand, other than the fact that petitioner was transferred to Oakdale from Hartford during June 2000, there is no evidence that the BICE Field Office Director had any contact with the State of Connecticut; let alone the contacts that the District Director had with the aliens in <u>Henderson</u> and which the Second Circuit could not say with confidence would have resulted in a finding that the District Director transacted business in that state.  In view of the above, there is no basis upon which to conclude that the BICE Field Officer Director has transacted any business in Connecticut and thus he does not fall within the ambit of Connecticut's long-arm statute. <u>Compare</u> <u>Mojica v. Reno</u>, 970 F. Supp. 130, 166 (E.D.N.Y. 1997) (finding that former INS District Director for New Orleans, Louisiana "transacted business" in New York sufficient for exercise of personal jurisdiction where District Director released petitioner on bond knowing he would return to New York , retained "the power to control his actions, to seek his surrender, and to deport him. . . ."and ordered his return to Louisiana). Accordingly, the Court need not move to the second prong of the personal jurisdiction analysis, a determination whether assertion of jurisdiction would comport with due process.

In sum, this Court should dismiss the petition because petitioner has not named a proper respondent and the proper respondent - - the BICE Field Office Director for the Western District of Louisiana - - is not amenable to service of process in Connecticut.

**B.    The Attorney General Is Not A Proper Habeas Respondent**.

To the extent petitioner argues that the Attorney General is the proper respondent to this habeas petition, that claim should be rejected by this Court.

In Ahrens v. Clark, 335 U.S. 188, 189, 193 (1948), the Supreme Court left open the question whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation. The courts of appeals, however, have divided on the question, with the majority applying the immediate custodian rule and holding that the Attorney General is not a proper respondent. Compare Robledo-Gonzales v. Ashcroft, 342 F.3d 667 (7th Cir. 2003) (Attorney General is not proper respondent); Roman v. Ashcroft, 340 F.3d 314 (6th Cir. 2003) (same); Vasquez v. Reno, 233 F.3d 688 (1st Cir. 2000) (same); Yi v. Maugans, 24 F.3d 500 (3rd Cir. 1994) (same); with Armentero v. INS, 340 F.3d 1058 (9th Cir. 2003) (Attorney general is proper respondent). Although the Second Circuit discussed the question at length, it reserved judgment in Henderson, 157 F.3d at 106. In Padilla, the Supreme Court again declined to resolve the issue.

14

Nonetheless, because the Attorney General is not petitioner's day-to-day custodian, he is not a proper respondent to this habeas petition.[12]  See Vasquez, 233 F.3d at 691 ("While the Attorney General is the ultimate overseer of all federal prisoners, . . . []he is not responsible for day-to-day prison operations and does not hold prisoners in actual physical custody."); Yi, 24 F.3d at 507 (rejecting the argument that the Attorney General could be the custodian for every alien in custody); Blango v. Thornburgh, 942 F.2d 1487, 1491-92 (10th Cir. 1991) (rejecting the argument that the Attorney General was a proper respondent because she directed Bureau of Prisons); Berthold v. Ashcroft, No. 3:02CV658, 2003 WL 1056653, *2-3 (D. Conn. Mar. 6, 2003)(Droney, J.)(dismissing immigration habeas petition without prejudice and holding that the Attorney General is not the proper respondent, "the appropriate respondent is the official having day-to-day control of the facility where the alien is being detained."); Pearce v. Ashcroft, No. 301CV1160, 2003 WL 1145468 (D. Conn. Mar. 12, 2003)(Droney, J.) (same); Hernandez-Osoria v. Ashcroft, No. 01 CIV 5545, 2002 WL 193574, *1 n.1 (S.D.N.Y. Feb. 7, 2002) (INS District Director where removal proceedings took place is proper respondent to habeas petition, not Attorney General).[13]

---

[12]This is so regardless of whether petitioner is challenging his present physical confinement or his final order of removal.

[13] The district courts in the Second Circuit are divided on this issue.  Compare Deng, 352 F. Supp.2d at 373-75 (Attorney

It is not enough that the alien is under the day-to-day control of the Attorney General's subordinate. Brennan, 813 F.2d at 12 (holding that warden, not parole board, was habeas petitioner's custodian). Billiteri, 541 F.2d at 948 (same); Guerra, 786 F.2d at 416 (same). Indeed, it would stretch the meaning of the term "custodian" beyond its limits to characterize anyone but the person with immediate control over the habeas petitioner as a "custodian." See Yi, 24 F.3d at 507 ("Otherwise, the Attorney General of the United States could be considered the custodian of every alien and prisoner in custody because ultimately she controls the district directors and the prisons."); Henderson, 157 F.3d at

---

General not proper respondent in INS habeas petition); Mohamed v. Ashcroft, 2002 WL 32506934 (D. Conn. Dec. 13, 2002) (same); Carvajales-Cepeda, 966 F. Supp. 207, 208 (S.D.N.Y. 1997) (same); Peon v. Thornburgh, 765 F. Supp. 155, 156 (S.D.N.Y. 1996)(same); Belvett v. Ashcroft, No. 00 Civ. 2463(LMM), 2002 WL 287839, at *1 (S.D.N.Y. Feb. 27, 2002) (same); Martinez-Rymer v. Ashcroft, No. 98 Civ. 5375, 2002 WL 372876, at *2 (S.D.N.Y. Feb. 14, 2002) (same); Guerrero-Musla v. Reno, No. 98 Civ. 2779 (HB), 1998 WL 273038, at *1 (S.D.N.Y. May 28, 1998) (same); see also Wang v. Reno, 862 F. Supp. 801, 812-13 (E.D.N.Y. 1994) (same); Iheme v. Reno, 819 F. Supp. 1192, 1196 (E.D.N.Y.1993) (same); Chukwurah v. INS, 813 F. Supp. 161, 168 (E.D.N.Y. 1993) (same); with Barahona v. Ashcroft, 2005 WL 475276 (S.D.N.Y. Feb. 25, 2005) (finding Attorney General to be proper respondent); Small v. Ashcroft, 209 F. Supp. 2d 294, 296-97 (S.D.N.Y. 2002) (same); Barton v. Ashcroft, 152 F. Supp.2d 235, 240-41 (D. Conn. 2001); Gelin v. Ashcroft, 3:02cv1857(PCD), slip op., at 3 (D. Conn. Jan. 13, 2003) (Dorsey, J.); Alcaide-Zelaya v. McElroy, No. 99 Civ. 5102 (DC), 2000 WL 1616981 (S.D.N.Y. Oct. 27, 2000) (same); Arias-Agramonte v. Comm'r of INS, No. 00 Civ. 2412 (RWS), 2000 WL 1059678 (S.D.N.Y. Aug. 1, 2000) (same); Nwankwo v. Reno, 828 F. Supp. 171, 173-73 (E.D.N.Y. 1993) (same); Pena-Rosario v. Reno, 83 F. Supp.2d 349, 357 (E.D.N.Y. 1999) (same); Pottinger v. Reno, 51 F. Supp.2d 349, 357 (E.D.N.Y. 1999) (same); Lee v. Ashcroft, 216 F. Supp. 2d 51, 54-55 (E.D.N.Y. 2002).

126 (noting that "*Billiteri* bars the designation of a higher authority as the custodian when a habeas petitioner is under the day-to-day control of another custodian (such as the prison warden"). Further, the Second Circuit has left open the question, it has acknowledged the "strong arguments to be made against deeming the Attorney General to be an appropriate respondent in alien habeas cases," including the prevention of forum shopping. See Henderson, 157 F.3d at 126 ("The Attorney General is designated [under 18 U.S.C. § 4001 (1994)], as the custodian of *all* federal prisoners, . . . yet no one seriously suggests that []he is a proper respondent in prisoner habeas cases.") (emphasis in original).

In this case, a determination that the Attorney General is petitioner's custodian would strongly undermine the requirements of personal jurisdiction and venue, and enable habeas petitioners to freely forum shop in the jurisdiction with the most hospitable law. See Roman, 340 F.3d at 322-23; Henderson, 152 F.2d at 126-28. Petitioner has not presented any unusual facts or circumstances that would warrant such an extraordinary and "peculiarly opportunistic" result. Vasquez, 233 F.3d at 696. Accordingly, this Court should reject such an argument.

**II. As An Alternative To Dismissal, The Petition Should Be Transferred To The Western District of Louisiana.**

In the event that the Court does not dismiss the instant petition for lack of personal jurisdiction, it should be

17

transferred to the Western District of Louisiana because venue is not proper in the District of Connecticut. Petitioner has filed his petition in the wrong judicial circuit. Section 242(b)(2) of the INA requires an alien to seek review of a final order of removal in "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." INA 242(b)(2), 8 U.S.C. § 1252(b)(2). In this case, any review available to petitioner had to be sought in the United States Court of Appeals for the Fifth Circuit, the judicial circuit covering Oakdale, Louisiana, where his removal proceeding was completed. See id.; Hadera v. INS, 136 F.3d 1338, 1341 (D.C. Cir. 1998) (holding, pursuant to IIRIRA transition rule 309(c)(4)(D), that venue was improper in D.C. Circuit because deportation proceeding was completed in Arlington, Virginia).[14] Petitioner's failure to comply with the INA's statutory venue requirement supplies an additional ground for dismissal of this petition for review. This court has statutory authority to transfer cases over which it lacks jurisdiction "to any other such court in which the action or appeal could have been brought at the time it was filed." 28 U.S.C. § 1631 (1994).

## **CONCLUSION**

For the foregoing reasons, respondents respectfully request

---

[14] IIRIRA transition rule 309(c)(4)(D) is almost identical to INA § 242(b)(2), as amended by IIRIRA.

that the Court dismiss the instant habeas petition for lack of jurisdiction or, in the alternative, transfer the petition to the appropriate venue, the Western District of Louisiana.

                    Respectfully submitted,

                    KEVIN J. O'CONNOR
                    UNITED STATES ATTORNEY

By: _____
     DOUGLAS P. MORABITO
     ASSISTANT UNITED STATES ATTORNEY
     Federal Bar No. ct20962
     157 Church Street, 24th Floor
     New Haven, CT 06510

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent via first class overnight mail, March 15, 2005, to:

Ignatius Umeadi Okonkwo
Inmate #16057-265
Etowah County Detention Center
Gadsen, AL 35904

By: _____
     DOUGLAS P. MORABITO
     ASSISTANT UNITED STATES ATTORNEY